### IN UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| EDNA FRANCHINI and VALERIE SEALS, *individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>ACCU-TIME SYSTEMS, INC.,<br><br>Defendant. | Case No. 1:21-cv-05075<br><br>Hon. Steven C. Seeger |

### DEFENDANT ACCU-TIME SYSTEMS, INC.'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
### OR, IN THE ALTERNATIVE, TO STAY THE PROCEEDINGS

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Accu-Time Systems, Inc. ("ATS" or the "Company"), respectfully moves this Court for an Order dismissing, with prejudice, Plaintiffs' Class Action Complaint (the "Complaint"). As explained below, Plaintiffs' Complaint should be dismissed because ATS lacks the requisite minimum contacts with Illinois for the Court to assert personal jurisdiction. Moreover, the Complaint should be dismissed because it fails to state a viable claim under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), as Plaintiffs have failed to allege any facts to support the conclusory allegations in the Complaint. Specifically, Plaintiffs have failed to allege any facts to establish that ATS was in the possession of, or collected, Plaintiffs' biometric data.

In the alternative, the Court should stay the proceedings until the Seventh Circuit issues its impending decision in *Cothron v. White Castle Systems, Inc.*, Case No. 20-3202 (7th Cir.), as to the fundamental question of what constitutes a "violation" under BIPA – *i.e.*, whether an individual violation accrues with each biometric scan, or only once after the initial scan – and, consequently, the extent of statutory damages available to BIPA plaintiffs. The Court's decision in *Cothron* will

significantly impact the manner and scope in which this case proceeds, including with respect to the scope of any permitted discovery and the Court's consideration of Plaintiffs' pending Motion for Class Certification.

In support of this Motion, ATS states as follows:

## I.    BACKGROUND

### A.    BIPA and the Complaint Allegations

BIPA is a narrowly-tailored law that regulates, but does not prohibit, the collection and use of "biometric identifiers" and "biometric information" (hereinafter, "biometric data") by private entities. *See* 740 ILS 14/1 *et seq.* Before a private entity collects biometric data, it must: (1) inform the subject in writing that biometric data is being collected or stored; (2) inform the subject of the purpose for which, and the length of time, the data is being collected; (3) obtain a written release signed by the subject of the data; and (4) develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying the data. 740 ILCS 14/15(a)-(b).

Plaintiffs' Complaint sets forth bare bones allegations that ATS violated BIPA by: (1) "requir[ing] Plaintiffs to scan their fingerprint into an ATS biometric system", (2) "stor[ing] Plaintiff's fingerprint data in its databases", (3) "transmitt[ing] the data using ATS's software", (4) "fail[ing] to first inform Plaintiffs of the specific limited purposes or length of time for which it collected, stored, or used fingerprints," and (5) "fail[ing] to inform Plaintiffs of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints." Compl., ¶¶ 38-40. However, Plaintiffs' Complaint lacks any allegations regarding Plaintiffs' purported connection to ATS and/or as to how ATS purportedly came to "require" Plaintiffs to provide their biometric information. The lone allegation in Plaintiffs' Complaint suggesting even a remote connection to ATS is that "Plaintiffs performed duties for one of ATS's clients in

Illinois." *See* Compl., ¶ 37. Nowhere in Plaintiffs' Complaint do they allege which of ATS's clients Plaintiffs actually worked for, when they began working for this "client," or anything else to establish a factual basis for connecting their purported employment by some undisclosed employer to ATS.

ATS can only speculate that the ATS "client" to which Plaintiffs refer in the Complaint is Ecolab Inc., named as a defendant in a separate lawsuit filed by Plaintiff Edna Franchini ("Franchini"), which is currently pending in this Court before the Honorable John Z. Lee. *See Franchini v. Ecolab, Inc.*, Case No. 21-cv-891 (N.D. Ill.). But even if the Court were to consider the Class Action Complaint filed in the *Ecolab* matter for purposes of ATS's Rule 12(b)(2) motion to dismiss,[1] Plaintiffs in that case fail to allege any facts establishing the Court's personal jurisdiction over ATS. *See* Class Action Complaint, attached hereto as Exhibit A. That is because such jurisdiction would not be proper in this case.

### B. ATS' Business

ATS is a global time collection device manufacturer and seller. *See* Declaration of Lisa Gladysz, ¶ 4, attached hereto as Exhibit B ("Gladysz Decl."). ATS is incorporated in the Commonwealth of Pennsylvania and has its principal place of business in Windsor, Connecticut. *See* Gladysz Decl., ¶ 3. While ATS is registered to do business in Illinois, it has no employees in Illinois, does not own any physical property in Illinois, does not sell products in any physical location in Illinois, does not conduct any advertising or marketing targeted to customers in Illinois, does not regularly send any company representatives to Illinois, and does not maintain bank or

---

[1] The Court should not consider any documents outside the four corners of Plaintiffs' Complaint for purposes of ATS's Rule 12(b)(6) motion to dismiss for failure to state a claim. *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1023 (N.D. Ill. 2008) ("It is well-established … that with respect to a motion under Rule 12(b)(6), the court can only consider the allegations made within the four corners of the complaint.").

other financial accounts in Illinois. *See* Gladysz Decl., ¶¶ 9-14. Indeed, no ATS employee has set foot in Illinois on company business since at least October 2017. *See* Gladysz Decl., ¶ 15.

Instead, ATS develops and markets its time collection hardware, software, and comprehensive cloud-based integration solutions to its customers throughout the world. *See* Gladysz Decl., ¶ 4. ATS sells its devices and software services to customers, who then use them for their own businesses. *See* Gladysz Decl., ¶ 5. As a result, ATS has no connection to the individual users of ATS's products. *See* Gladysz Decl., ¶ 5. Moreover, ATS does not generally track or control its products once they have been purchased. *See* Gladysz Decl., ¶ 6. Indeed, customers can move and use ATS's products anywhere they choose, including across state lines. *See* Gladysz Decl., ¶ 6. Customers also have complete control over the decision whether to utilize the fingerprint scanning feature available on certain of ATS's time collection devices. *See* Gladysz Decl., ¶ 7. Thus, ATS has no say in whether, where, or how its customers collect time keeping data. *See* Gladysz Decl., ¶ 8.

## II. ARGUMENT

### A. Plaintiffs' Complaint Should be Dismissed for Lack of Personal Jurisdiction

An action against a party over whom the Court lacks personal jurisdiction must be dismissed. *See* Fed. R. Civ. P. 12(b)(2); *Primack v. Pearl B. Polto, Inc.*, 649 F. Supp. 2d 884, 887 (N.D. Ill. 2009). Plaintiffs bear the burden of demonstrating "specific facts to support jurisdiction" over ATS in Illinois. *Cook Associates, Inc. v. E.G. Snyder Co.*, No. 88 C 8145, 1988 WL 139258, at *1 (N.D. Ill. Dec. 22, 1988); *Tamburo v. Dworkin,* 601 F.3d 693, 700 (7th Cir. 2010) ("The plaintiff has the burden of establishing personal jurisdiction" and must "make a prima facie showing of jurisdictional facts"). There are two forms of personal jurisdiction: (1) general jurisdiction, which allows a court to assert jurisdiction over a foreign corporation when its affiliations with the state are "so continuous and systematic as to render them essentially at home

in the forum state", and (2) specific jurisdiction, which allows a court to adjudicate claims that arise out of the defendant's activities in the forum state. *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Plaintiffs cannot establish either basis for asserting jurisdiction over ATS.

### 1. *The Court Lacks General Jurisdiction Over ATS*

As the U.S. Supreme Court has made clear, a court may assert general jurisdiction over a foreign corporation only when that corporation's affiliations with the state are "so continuous and systematic as to render them essentially at home in the forum state." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal quotation omitted). This strict standard is generally only met within "the state of [the defendant's] principal place of business and the state of its incorporation." *Kipp v. Ski Enter. Corp.*, 783 F.3d 695, 698 (7th Cir. 2015); *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). To establish general jurisdiction beyond those states would require a showing of *more than* "the 'substantial, continuous, and systematic course of business' that was once thought to suffice." *Kipp*, 783 F.3d at 698 (quoting *Daimler*, 134 S. Ct., at 760-61).

Here, Plaintiffs do not (because they cannot) allege any facts that would even remotely suggest that ATS is "at home" in Illinois. Instead, Plaintiffs allege in conclusory, unsupported fashion that ATS is subject to personal jurisdiction in Illinois because it "conducted business and scanned Plaintiffs' fingerprint and collected and stored Plaintiffs' fingerprint data in Illinois." Compl., ¶ 13. Plaintiffs further allege that "Defendant conducts business transactions in Illinois and have [sic] committed tortious acts in Illinois." Compl., ¶ 14. However, Plaintiffs provide no factual support for these allegations. Moreover, Plaintiffs' allegations are refuted by the Declaration of ATS's President and Chief Executive Officer, Lisa Gladysz. *See* Gladysz Decl. As established by Ms. Gladysz's declaration, while ATS is registered to do business in Illinois, ATS has not had any employee set foot in Illinois on company business since at least October 2017.

*See* Gladysz Decl., ¶¶ 9, 15. This is because ATS does not maintain offices in Illinois, has no employees in Illinois, does not own any physical property in Illinois, does not sell products in any physical location in Illinois, does not advertise in Illinois, and maintains no accounts in Illinois. *See* Gladysz Decl., ¶¶ 9-14. Moreover, ATS is incorporated in Pennsylvania and has its principal place of business in Connecticut. *See* Gladysz Decl., ¶ 3.

Thus, ATS patently lacks the minimal contacts with Illinois required for it to be subject to general jurisdiction in the state. *See Purdue Research Foundation v. Sanofi-Syntheloabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003) (finding no basis for exercising general jurisdiction because the defendant must be "constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [a foreign] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world."); *Siswanto v. Airbus, S.A.S.*, 153 F. Supp. 3d 1024, 1029 (N.D. Ill. 2015) (refusing to exercise general jurisdiction over a foreign defendant because the asserted "contacts may show that Airbus has extensive contacts with the United States in the aggregate, but they do not establish that the company is 'essentially at home' here").

2. *The Court Lacks Specific Jurisdiction Over ATS*

Specific jurisdiction is limited to circumstances in which the alleged controversy "arise[s] out of or relate[s] to" the defendant's contacts with the forum, in addition to establishing that minimum contacts exist. *Primack*, 649 F. Supp. 2d at 888. A court may exercise specific personal jurisdiction over a defendant only when: "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [it]self of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705-06 (7th Cir. 2019) (internal citations omitted).

In determining whether specific personal jurisdiction exists, the "proper question is not

where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." *Telemedicine Solutions LLC v. WoundRight Technologies, LLC*, 27 F. Supp. 3d 883, 890 (N.D. Ill. 2014) (quoting *Walden v. Fiore,* 134 S. Ct. 1115, 1125 (2014)). The Seventh Circuit has characterized this inquiry as an "express aiming test," which requires (1) intentional conduct; (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt in the forum state. *Id.* at 891 (citing *Tamburo,* 601 F.3d 693).

The minimum-contacts analysis "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct., at 1118 (internal citations omitted). To find minimum contacts with the state, it is essential "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Primack*, 649 F. Supp., at 888 (internal citations omitted). This "purposeful availment" requirement of the minimum contacts standard ensures that a "defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2183-2184 (1985)).

Here, as explained in detail above in Section II(A)(1), ATS has not engaged in any intentional conduct with the Plaintiffs or the forum state, has not conducted business activities in Illinois, and thus has not "purposefully availed" itself of the privilege of conducting activities in Illinois. Rather, ATS's products are available globally, with no preference for or advertisements directed towards Illinois. *See* Gladysz Decl., at ¶¶ 4, 12. Thus, while ATS is registered to do business in Illinois, this is not enough to show that ATS has the requisite minimum contacts with Illinois to warrant specific personal jurisdiction. *See, e.g., Gullen v. Facebook*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (finding that Facebook being registered to do business in Illinois and

having a sales and advertising office in Illinois both had no relationship to Facebook's alleged collection of biometric information and were also insufficient to find that Illinois had specific personal jurisdiction over Facebook).

Moreover, simply making products available anywhere, or operating a website, does not satisfy the requirements for specific jurisdiction. *See, e.g., BE2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be hauled into court in that state without offending the Constitution."); *see also Advanced Tactical Ordinance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-802 (7th Cir. 2014) (holding that when looking into online sales, there must be some evidence linking defendants to the allegedly tortious activity; otherwise, a plaintiff "could bring suit in literally any state where the defendant shipped at least one item," which would run counter to longstanding Supreme Court precedent.). Here, ATS's only potentially relevant activity is limited to the selling of its products to customers in various U.S. states, Illinois included, who then, at their discretion, could move and install ATS's timekeeping devices in other locations, including across state lines. *See* Gladysz Decl., ¶¶ 4, 6. Indeed, there are no factual allegations in the Complaint to suggest that ATS took any action specifically targeted or directed at Illinois. ATS cannot be subject to specific jurisdiction in Illinois simply because its products may be purchased by customers who have offices or facilities in Illinois.

Furthermore, ATS's alleged contact with Illinois is too "random, fortuitous, or attenuated" to support specific jurisdiction. *Burger King*, 105 S. Ct. at 2183; *see also Primack*, 649 F. Supp., at 888. Indeed, the conduct alleged by Plaintiffs (i.e., the use of ATS's timekeeping devices by Plaintiffs' unnamed employer(s)) is not the result of contact with Illinois that ATS created, but

rather the result of purported decisions by Plaintiffs' alleged employer(s) to both (1) use ATS devices in Illinois, and (2) require Plaintiffs to provide biometric data. As such, ATS not only has had no relevant contacts with Illinois, but also has had no contact with the putative class members. *See* Gladysz Decl., ¶ 13. Instead, its relationship solely would be with Plaintiffs' employer(s), whom Plaintiffs failed to disclose in their Complaint. This type of "random, fortuitous, or attenuated" contact does not support specific jurisdiction. *See, e.g., Bray v. Lathem Time Co.*, 2020 WL 1492742, at *4 (C.D. Ill. Mar. 27, 2020) (dismissing BIPA claims for lack of personal jurisdiction because the only contact defendant had with Illinois occurred when "its customers-employers, not end users-reach out to purchase its products and services", the only potential injury of the putative class members' stemmed from their employers' subsequent use of defendants' devices, which "take place wherever and in whatever manner the employers choose").

Accordingly, this Court lacks general and specific jurisdiction over ATS, and Plaintiffs' Complaint should be dismissed for lack of personal jurisdiction.

### B. **Plaintiffs' Complaint Should Be Dismissed For Failure to State a Claim**

#### 1. *Rule 12(b)(6) Standard*

A Rule 12(b)(6) motion to dismiss challenges a plaintiff's complaint as failing to sufficiently state a claim on which relief may be granted. Fed R. Civ. P. 12(b)(6). Under applicable notice-pleading standards, a complaint must "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007); *see also* Fed. R. Civ. P. 8(a)(2). Although a complaint need not provide detailed factual allegations, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.,* at 1964-65. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff

has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). A claim is facially viable "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Here, Plaintiffs have failed to allege any facts that would remotely suggest that they had any relationship with ATS, much less that they are entitled to relief based on any actions taken by ATS. Therefore, Plaintiffs cannot possibly state a viable BIPA claim under allegations set forth in the Complaint and have failed to state a claim upon which relief can be granted.

        2.    *Plaintiffs Fail to Allege Sufficient Facts to State a Viable Claim Under BIPA*

Plaintiffs cannot state a claim under Sections 15(a), (c), or (d) of BIPA because Plaintiffs fail to allege sufficient facts to plausibly establish that ATS has had any control over, or has been in possession of, Plaintiffs' biometric data. Furthermore, Plaintiffs' claims under Section 15(b) of BIPA fail because Plaintiffs fail to allege sufficient facts to establish that ATS "collects" biometric data within the meaning of BIPA.

        a.    *Plaintiffs Fail to Allege That ATS Was in "Possession" of Plaintiffs' Biometric Data as Required Under Sections 15(a), (c), or (d)*

Sections 15(a), (c), and (d) of BIPA apply to private entities "in possession" of biometric data. 740 ILCS 14/15(a), (c)-(d). Illinois courts have recognized that BIPA does not define "possession," and accordingly, courts assume that the legislature intended for the term to have its "popularly understood meaning," or its "settled legal meaning." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020) (internal citation omitted). The Illinois Supreme Court has held that "possession…occurs when a person has or takes control of the subject property or holds the property at his or her disposal." *Id.* (quoting *People v. Ward*, 215 Ill. 3d 317, 325 (2005).

Generally, courts have found that when a plaintiff fails to allege that the defendant exercised dominion or control over the plaintiff's biometric data, but instead "merely parrot[s] the statutory language" of BIPA as Plaintiffs do here, the BIPA claim cannot stand. *Heard*, 440 F. Supp. 3d at 968 (dismissing plaintiff's BIPA claims against the manufacturer of a fingerprinting device used by plaintiff's employer for failing to adequately plead "possession," because he failed to allege that the defendant had dominion or control over his biometric data"); *see also Jacobs v. Hanwha Techwin America, Inc.*, 2021 WL 3172967, at *3-4 (N.D. Ill. July 27, 2021) (dismissing plaintiff's BIPA claims where plaintiff failed to allege facts sufficient to plausibly establish that defendant exercised control over his data or held his data at its disposal, noting that the complaint did not state facts such as whether the defendant could freely access the data or how the defendant allegedly received the data).

Here, not only does Plaintiffs' Complaint fail to allege that ATS exercised any dominion or control over Plaintiffs' biometric data – thus failing to meet the definition of "possession" necessary for BIPA liability – the Complaint also fails to allege *any* facts whatsoever to connect Plaintiffs to Defendant ATS. Indeed, Plaintiffs have not even stated which of ATS' "clients" they work for. *See* Compl. As such, Plaintiffs' Complaint merely recites the statutory elements of a BIPA claim, without alleging any facts upon which to reasonably establish ATS' liability. These types of baseless allegations are not sufficient to plead a violation of BIPA, and thus should be dismissed pursuant to Rule 12(b)(6).

> b. *Plaintiffs Fail to Allege That ATS "Collects" Plaintiffs' Biometric Data as Required Under Section 15(b)*

Section 15(b) of BIPA applies to entities that "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data. 740 ILCS 14/15(b). It is well-settled that mere possession is insufficient to trigger a violation of Section 15(b), as there is a difference between

*possessing* and *collecting* biometric data. *See Heard,* 440 F. Supp. 3d at 965; *see also Namuwonge v. Kronos, Inc.,* 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019).

Courts consistently dismiss Section 15(b) claims when the complaint fails to allege that the defendant took an active step in collecting the plaintiff's biometric data. *See, e.g., Heard,* 44 F. Supp. 3d at 966-68 (dismissing plaintiff's 15(b) claim as he "repeatedly allege[d] that BD 'collected' his biometric data without alleging how, when, or any other factual detail", and finding that the plaintiff's allegations "'merely parrot' the BIPA's statutory language," as they did not provide "any specific facts to ground…legal claims"); *see also, Namuwonge*, 418 F. Supp. 3d at 285-86 (dismissing Section 15(b) claim because the plaintiff did not plausibly allege that the defendant scanner manufacturer itself "collected, captured, or otherwise obtained [plaintiff's] biometric information," and it was clear from the complaint that the employer collected the data using a system provided by the technology-provider defendant); *see also Jacobs,* 2021 WL, at *2-3 (dismissing plaintiff's Section 15(b) claim upon finding that in order for Section 15(b) to apply, "an entity must, at a minimum, take an active step to collect, capture, purchase, or otherwise obtain biometric data").

As in the above-cited cases, Plaintiffs here have not pled any allegations detailing any "active steps" taken by ATS to "collect, capture, purchase, or otherwise obtain" their biometric data. Similar to *Heard,* the only link the Plaintiffs allege between themselves and ATS is that they purportedly "performed duties for one of ATS's clients" and that the equipment required them to scan their fingerprint into an ATS biometric system.[2] *See* Compl., ¶¶ 37-38; *compare with Heard*, 440 F. Supp. 3d at 967 (finding that because the complaint only alleged that his employer required him to scan his fingerprint, but did not allege how the data made its way into the defendant's

---

[2] In *Heard,* the plaintiff at least identified the name of his employer. Here, Plaintiffs have not specified either the name of their employer or the ATS "client" to which their Complaint references.

systems, the plaintiff did not state a claim for relief under Section 15(b)). Rather than asserting any facts indicating that ATS captured their biometric data, Plaintiffs merely recite the statutory language of BIPA, without asserting *any* factual allegations regarding ATS's conduct. Applicable precedent makes clear that such allegations are patently deficient, and that Plaintiffs' Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

### C. In the Alternative, the Court Should Stay the Proceedings Pending the Seventh Circuit's Rulings in *Cothron v. White Castle Systems, Inc.*

In the alternative, should this Court allow this matter to proceed, Defendant respectfully requests the Court stay the proceedings until the Seventh Circuit issues its impending decision in *Cothron v. White Castle Systems, Inc.*, Case No. 20-3202 (7th Cir.), which should significantly impact how this case proceeds. Specifically, in *Cothron* (appeal granted Nov. 9, 2020), the Seventh Circuit granted interlocutory appeal in order to decide when claims under Sections 15(b) and 15(d) of BIPA accrue (*i.e.*, whether alleged violations accrue each time a person submits to a biometric scan, or whether a claim accrues only following the first such submission). *See* Exhibit C, Order granting *Cothron* appeal. The Seventh Circuit's decision in *Cothron* should have a significant impact on the size of the putative class that Plaintiffs may seek to certify, as it could limit or even eliminate the claims of certain putative class members. Indeed, if the Seventh Circuit finds, in *Crothon*, that a BIPA claim accrues upon the first submission of biometric information (as opposed to following each separate submission), the claims of many putative class members may well be time barred—thus, significantly limiting the size of the putative class and any damages that the class might hope to recover.

This Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 706 (1997*); see also Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir. 2019). In determining whether to grant a stay, courts generally consider

the following three factors: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *In re Groupon Derivative Litigation,* 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012). Here, all three of these factors are met. First, staying this case pending the resolution of the *Cothron* appeal would "provide much needed clarity" and "simplify the issues in question" regarding Plaintiff's claims and class certification proceedings. *See e.g., Herron v. Gold Standard Baking, Inc.*, No. 20-CV-07469, 2021 WL 1340804, at \*4-5 (N.D. Ill. Apr. 9, 2021). Second, a stay will "reduce the burden of litigation on the Parties and on the court" as the pending decision could bar Plaintiff's claims and drastically limit the size of the putative class. *Id.* at \*4. Third, a modest delay of this litigation pending the Seventh Circuit's ruling in *Cothron* will not prejudice Plaintiff.

Indeed, numerous courts have entered stays while awaiting Appellate Court guidance regarding the nuances of BIPA litigation. *See, e.g., Herron*, 2021 WL 1340804, at \*4-5 (N.D. Ill. Apr. 9, 2021) (granting stay "pending the Illinois Appellate Court's decisions in *Tims* and *Marion,* and pending the Seventh Circuit's decision in *White Castle"*); *see also, Brianna Starts v. Little Caesar Enterprises, Inc.,* No. 19-CV-1575, 2021 WL 4988317, at \*3 (N.D. Ill. Oct. 19. 2021) (granting stay pending the outcomes of *McDonald, Tims,* and *Cothron*, finding that doing so would "significantly advance judicial economy and spare the parties the burden of unnecessary briefing, without causing any significant hardship to Plaintiff"); *see also, Martinez, et. al. v. Pie Five Restaurants, Inc.,* 1:21-CV-02814 (granting stay pending a decision in *McDonald v. Symphony Bronzeville Park, LLC*, Ill. S.Ct., Case No. 126511). *See* <u>Exhibit D</u>, Notification of Docket Entry Granting Defendant's Motion to Stay. Accordingly, if the Court allows this case to proceed, a stay should be entered pending the Seventh Circuit's ruling in *Cothron*.

### III. CONCLUSION

For the foregoing reasons, Defendant ATS respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice. In the alternative, Defendant ATS respectfully requests that this Court stay the proceedings pending the Seventh Circuit's decision in *Cothron v. White Castle Systems, Inc.,* Case No. 20-3202 (7th Cir.).

Respectfully submitted,

**ACCU-TIME SYSTEMS, INC.**

By: /s/ *Sonya Rosenberg*
One of Its Attorneys

Sonya Rosenberg
srosenberg@nge.com
Alexis M. Dominguez
adominguez@nge.com
Alissa J. Griffin
agriffin@nge.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL 60602-3801
(312) 269-8000

Andrew M. Zeitlin (*pro hac vice* pending)
azeitlin@goodwin.com
SHIPMAN & GOODWIN LLP
300 Atlantic Street, 3rd Floor
Stamford, CT 06901-3522
(203) 324-8111

*Counsel for Defendant Accu-Time Systems, Inc.*

Dated: November 1, 2021

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this 1st day of November, 2021, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to all counsel of record.

/s/ *Alexis M. Dominguez*