# Exhibit A

## IN THE CIRCUIT COURT OF EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

EDNA FRANCHINI, individually and on
behalf of all others similarly situated,

    *Plaintiff,*

 v.

ECOLAB INC.,

    *Defendant.*

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 11869497
2021L000059
FILEDATE: 1/19/2021 12:00 AM
Date Submitted: 1/18/2021 3:42 PM
Date Accepted: 1/19/2021 10:49 AM
DP

Case No.:

## 2021L000059

## CLASS ACTION COMPLAINT

Plaintiff Edna Franchini ("Edna" or "Plaintiff") brings this Class Action Complaint against

Defendant ECOLAB, INC. ("ECOLAB" or "Defendant") to put a stop to its unlawful collection,

use, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff,

for Plaintiff's Class Action Complaint, alleges as follows upon personal knowledge as to Plaintiff's

own acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1.  ECOLAB is a leader in the prevention of contaminated water and infection, with a

location in Illinois.

2.  When employees and contracted workers first begin their jobs at ECOLAB, they

are required to scan their fingerprint and/or handprint (collectively, "handprint") in its biometric

time tracking system as a means of authentication, instead of using only key fobs or other

identification cards.

3.  While there are tremendous benefits to using biometric time clocks in the

workplace, there are also serious risks. Unlike key fobs or identification cards—which can be

changed or replaced if stolen or compromised—handprints and fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a handprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

4.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as handprints.

5.      Despite this law, ECOLAB disregarded its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, ECOLAB has violated (and continues to violate) the BIPA because it did not:

- Before collection, properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their handprints were being collected, stored, and used, as required by the BIPA;

- Before collection provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's handprints, as required by the BIPA; nor

- Before first collecting receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain handprints, as required by the BIPA.

6.      Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

7.      Plaintiff is a natural person and citizen of the State of Illinois.

8.      Defendant ECOLAB is a Delaware Foreign Corporation, with a business location in Illinois.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois and have committed tortious acts in Illinois.

10.     Venue is proper in DuPage County because Defendant operates throughout this County and "resides" in DuPage County within the meaning of 735 ILCS § 5/2-102(a).

## FACTUAL BACKGROUND

### I.      The Biometric Information Privacy Act.

11.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

12.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

13.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

14.     The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

15.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

16.     Biometric identifiers include retina and iris scans, voiceprints, scans of fingerprints and face geometry, and—most importantly here—handprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

17.     The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made

available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

18.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II.     ECOLAB Violates the Biometric Information Privacy Act.

19.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

20.     Unfortunately, ECOLAB failed to take note of the passage of the BIPA. ECOLAB continued to collect, store, and use its employees' biometric data in violation of the BIPA.

21.     Specifically, when employees and contracted workers work there, they are required to have their handprints scanned in order to enroll them in its handprint database.

22.     ECOLAB uses an employee time tracking system that requires employees to use their handprints as a means of authentication. Unlike a traditional timeclock, employees have to use their handprint to "punch" in to or out of work.

23.     ECOLAB failed to inform its employees and contracted workers of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

24.     ECOLAB similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' handprints when the initial purpose for collecting or obtaining their handprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from ECOLAB databases—or if they ever will be.

25.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Maruichi's —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But ECOLAB disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

26.     Ultimately, ECOLAB disregards its employees' statutorily protected privacy rights by violating the BIPA.

## FACTS SPECIFIC TO PLAINTIFF

27.     Plaintiff performed duties for ECOLAB in Illinois.

28.     As a contracted worker, ECOLAB required Plaintiff to scan Plaintiff's handprint so that it could use it as an authentication method to track time. ECOLAB subsequently stored

Plaintiff's handprint data in its databases.

29.　　Each time Plaintiff began and ended a workday, ECOLAB required a scan of Plaintiff's handprints.

30.　　ECOLAB failed to FIRST inform Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used handprints.

31.　　Similarly, ECOLAB failed to firm inform Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete handprints.

32.　　Prior to providing biometric data, Plaintiff did not sign a written release allowing ECOLAB to collect or store handprints.  An after the fact waiver is not effective under BIPA.

33.　　Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by ECOLAB violations of the BIPA alleged herein.

34.　　Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries ECOLAB has caused.

## CLASS ALLEGATIONS

35.　　**Class Definition**: Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of Plaintiff and a Class of similarly situated individuals, defined as follows:

> All persons who had their handprints or fingerprints collected, captured, received, otherwise obtained, or disclosed by Defendant in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal

representatives, successors, and assigns of any such excluded persons.

36.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. ECOLAB has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

37.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a)  whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

b)  whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c)  whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

d)  whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

e)  whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f)  whether Defendant complies with any such written policy (if one exists); and

g)  whether Defendant used Plaintiff and the Class' handprints to identify them.

38.     **Adequate Representation**: Plaintiff will fairly and adequately represent and

protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

39.     **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Maruichi's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Maruichi's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(<u>On Behalf of Plaintiff and the Class</u>)**

40.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41.     The BIPA requires companies to obtain informed written consent from employees

9

before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 ILCS 14/15(b) (emphasis added).

42.     The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.,* when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

43.     Unfortunately, ECOLAB fails to comply with these BIPA mandates.

44.     ECOLAB qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

45.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by ECOLAB (in the form of their handprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

46.     Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

47.     ECOLAB violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from

Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

48.     ECOLAB violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

49.     ECOLAB violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

50.     ECOLAB violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

51.     By collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, ECOLAB violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

52.     On behalf of themselves and the Class, Plaintiff seek: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant's to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages for each of Defendant's violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully request that the Court enter an Order:

A.       Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing their counsel as Class Counsel;

B.       Declaring that Defendant's actions, as set out above, violate the BIPA;

C.       Awarding statutory damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20;

D.       Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

F.       Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G.       Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H.       Awarding such other and further relief as equity and justice may require.


Dated: January 18, 2021                    Respectfully submitted,

                                           **Edna Franchini, individually and on behalf of all others similarly situated,**

                              By: /s/ David Fish_____
                                    One of Plaintiff's Attorneys

David Fish
dfish@fishlawfirm.com
Mara Baltabols
mara@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
docketing@fishlawfirm.com

Exhibit B

**IN UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EDNA FRANCHINI and VALERIE SEALS,
*individually and on behalf of all others similarly*
*situated,*

                    Plaintiffs,

          v.

ACCU-TIME SYSTEMS, INC.,

                    Defendant.

Case No. 1:21-cv-05075

Hon. Steven C. Seeger

### DECLARATION OF LISA GLADYSZ

I, Lisa Gladysz, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am over 21 years of age and fully competent to testify. This declaration is based upon my personal knowledge and/or my review of records maintained by Accu-Time Systems, Inc. ("ATS") in the ordinary course of business. If called upon to do so, I could and would testify competently consistent with the testimony herein.

2.      I am the President and Chief Executive Officer of ATS. I have been an employee of ATS since October 13, 2010.

3.      ATS is incorporated in the Commonwealth of Pennsylvania and its principal place of business is located in Windsor, Connecticut.

4.      ATS is a global time collection device manufacturer and seller. ATS develops and markets its time collection hardware, software, and comprehensive cloud-based integration solutions to customers throughout the world.

5.      As relevant to this litigation, ATS sells its devices and software services to customers, who then use them for their own businesses. ATS has no connection to the individual users of ATS's products.

6. ATS does not generally track or otherwise trace or control its products once they are sold to customers. Indeed, customers can move and use ATS's products anywhere they choose, including across state lines.

7. Customers also have complete control over the decision whether to utilize the fingerprint scanning feature available on certain of ATS's time collection devices.

8. ATS has no say in whether, where, or how its customers collect time keeping data.

9. ATS is registered to do business in Illinois, but has no employees or offices in the State of Illinois.

10. ATS does not own any physical property in the State of Illinois.

11. ATS does not sell its products in any physical location in the State of Illinois.

12. ATS does not conduct any advertising or marketing in the State of Illinois.

13. ATS does not regularly send any company representatives, sales or otherwise, to Illinois.

14. ATS maintains no bank or other financial accounts in Illinois.

15. To the best of my knowledge, no ATS employee has set foot in Illinois on company business since at least October 2017.

16. ATS first received a copy of the Complaint in this action on August 25, 2021.

17. ATS has never employed or had direct contact with the named Plaintiffs, Edna Franchini and Valerie Seals.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 1, 2021.

Lisa Gladysz
President and CEO
Accu-Time Systems, Inc.

Exhibit C

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

SHORT RECORD
Appeal No. 20-3202
Filed 11.12.2020

**ORDER**

November 9, 2020

Before

DIANE S. SYKES, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

| No. 20-8029 | IN RE: WHITE CASTLE SYSTEM, INC., Petitioner |
|---|---|
| **Originating Case Information:** | |
| District Court No: 1:19-cv-00382 Northern District of Illinois, Eastern Division District Judge John J. Tharp | |

The following are before the court:

1. **WHITE CASTLE SYSTEM, INC.'S PETITION FOR PERMISSION TO APPEAL ORDER PURSUANT TO 28 U.S.C. § 1292(b)**, filed on October 13, 2020, by counsel for the petitioner.

2. **PLAINTIFF-RESPONDENT'S ANSWER IN OPPOSITION TO DEFENDANT-PETITIONER'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**, filed on October 29, 2020, by counsel for the respondents.

**IT IS ORDERED** that the petition for permission to appeal is **GRANTED**. The district court's certification of its order, the petition, and the answer each address a certified question that the petitioner proposed and the district court reframed. But 28 U.S.C. § 1292(b) does not authorize appeal of a particular question; it authorizes appeal of an "order [that] involves a controlling question of law." The appeal is not confined to what either the district court or the parties identified as the "certified question." *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996); *Edwardsville Nat. Bank & Tr. Co. v. Marion Labs., Inc.*, 808 F.2d 648, 650 (7th Cir. 1987).

**IT IS FURTHER ORDERED** that the petitioner shall pay the required docket fees to the clerk of the district court within fourteen days from the entry of this order pursuant to Federal Rule of Appellate Procedure 5(d)(1). Once the district court notifies this court that the fees have been paid, the appeal will be entered on this court's general docket. The district court stated that it intended to stay further proceedings in the case if we were to accept the appeal, and we agree that such a stay is warranted.

# Exhibit D

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.3.3**
**Eastern Division**

Gabriella Martinez, et al.

                                        Plaintiff,

v.                                                                  Case No.: 1:21−cv−02814
                                                                    Honorable Andrea R. Wood

Pie Five Restaurants, Inc.

                                        Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, October 5, 2021:

        MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing
held on 10/5/2021. For the reasons discussed on the record, Defendant's motion to stay
proceedings [7] is granted as follows. The case is stayed pending a decision by the Illinois
Supreme Court in *In re: McDonald v. Symphony Bronzeville Park, LLC*, No. 126511 (Ill.).
To ensure the preservation of evidence, however, Parties may serve Fed. R. Civ. P. 34
requests and third−party subpoenas, but any obligation to respond beyond preservation is
held in abeyance until the stay is lifted. By 12/6/2021, the parties shall file a joint status
report setting forth (1) the status of *In re: McDonald v. Symphony Bronzeville Park*, LLC,
No. 126511 (Ill.) before the Illinois Supreme Court, *Tims v. Black Horse Carriers, Inc.*,
Case No. 1−20−0562, before the Illinois Appellate Court for the First Judicial District,
*Marion v. Ring Container Techs., LLC*, No. 3−20−0184 before the Illinois Appellate
Court for the Third Judicial District, and *Cothron v. White Castle Sys.,Inc.*, No 20−3202
before the Seventh Circuit Court of Appeals; (2) confirmation that the parties have met
and conferred regarding the preservation of evidence; and (3) any change of
circumstances that the Court should consider in regards to the stay of proceedings in this
case. Mailed notice (dal, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.