**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EDNA FRANCHINI and VALERIE SEALS,

        Plaintiffs,

    v.

ACCU-TIME SYSTEMS, INC.,

        Defendant.

Case No. 1:21-cv-05075

Honorable Steven C. Seeger

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS RENEWED MOTION TO DISMISS**

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, and this Court's March 1, 2023 Order [Dkt. 35], Defendant Accu-Time Systems, Inc. ("ATS" or the "Company") respectfully files this Renewed Motion to Dismiss (the "Renewed Motion") Plaintiffs' Class Action Complaint (the "Complaint"). As explained below, Plaintiffs' Complaint should be dismissed because ATS lacks the requisite minimum contacts with Illinois for the Court to assert personal jurisdiction. Moreover, the Complaint should be dismissed because it fails to state a viable claim under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), as Plaintiffs have failed to allege any facts to support the conclusory allegations in the Complaint. Specifically, Plaintiffs have failed to allege any facts to establish that ATS was in the possession of, or collected, Plaintiffs' biometric data. In support of this Motion, ATS states as follows:

I.     **BACKGROUND**

    A.     **Rule 12(b)(6) Facts Concerning BIPA and the Complaint Allegations**

BIPA is a narrowly-tailored law that regulates, but does not prohibit, the collection and use of "biometric identifiers" and "biometric information" (hereinafter, "biometric data") by private

entities. *See* 740 ILS 14/1 *et seq.* Before a private entity collects biometric data, it must: (1) inform the subject in writing that biometric data is being collected or stored; (2) inform the subject of the purpose for which, and the length of time, the data is being collected; (3) obtain a written release signed by the subject of the data; and (4) develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying the data. 740 ILCS 14/15(a)-(b).

Plaintiffs' Complaint sets forth barebones allegations that ATS violated BIPA by: (1) supplying equipment that "required Plaintiffs to scan their fingerprint into an ATS biometric system," (2) "stor[ing] Plaintiffs' fingerprint data in its databases," (3) "transmitt[ing] the data using ATS's software," (4) "fail[ing] to first inform Plaintiffs of the specific limited purposes or length of time for which it collected, stored, or used fingerprints," and (5) "fail[ing] to inform Plaintiffs of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints." Compl., ¶¶ 38-40. However, Plaintiffs' Complaint lacks any allegations regarding Plaintiffs' purported connection to ATS, nor does it (nor can it) allege that ATS required Plaintiffs to provide their biometric information. The lone allegation in Plaintiffs' Complaint suggesting even a remote connection to ATS is that "Plaintiffs performed duties for one of ATS' clients in Illinois." *See* Compl., ¶ 37. Nowhere in Plaintiffs' Complaint do they allege which of ATS' clients Plaintiffs actually worked for, when they began working for any such client, or anything else to establish a factual basis for connecting Plaintiffs' purported employment by some undisclosed employer to ATS.

ATS can only speculate that the ATS "client" to which Plaintiffs refer in the Complaint is Ecolab Inc., named as a defendant in a separate lawsuit previously filed by Plaintiff Edna Franchini ("Franchini"). *See Franchini v. Ecolab, Inc.*, Case No. 21-cv-891 (N.D. Ill.). But even if the

Court were to consider the Class Action Complaint filed in the *Ecolab* matter for purposes of ATS' Rule 12(b)(2) motion to dismiss,[1] Plaintiffs in that case fail to allege any facts establishing the Court's personal jurisdiction over ATS. *See* Class Action Complaint (*Franchini v. Ecolab, Inc.*, Case No. 21-cv-891) [Dkt. 16-1], attached hereto as <u>Exhibit A</u>.

### B. Rule 12(b)(2) Facts Concerning ATS' Business

ATS is a global time collection time device manufacturer and seller. *See* Declaration of Lisa Gladysz [Dkt. 16-1], ¶ 4, attached hereto as <u>Exhibit B</u> ("Gladysz Decl."). ATS is incorporated in the Commonwealth of Pennsylvania, and has its principal place of business in Windsor, Connecticut. Gladysz Decl., ¶ 3. ATS has no employees in Illinois, does not own any physical property in Illinois, does not sell products in any physical locations in Illinois, does not conduct any advertising or marketing directed to customers in Illinois, does not regularly send Company representatives to Illinois and does not maintain a bank or other financial account in Illinois. Gladysz Decl., ¶¶ 9-14. Indeed, no ATS employees have set foot in Illinois for ATS business since at least October 2017. Gladysz Decl., ¶ 15.

Instead, ATS develops and markets its time collection hardware, software, and comprehensive cloud-based integration solutions to its customers throughout the world. *See* Gladysz Decl., ¶ 4. ATS sells its devices and software services to customers, who then use them for their own businesses. *See* Gladysz Decl., ¶ 5. As a result, ATS has no connection to the individual end users of ATS' products. *See* Gladysz Decl., ¶ 5. Moreover, ATS does not generally track or control its products once they have been purchased. *See* Gladysz Decl., ¶ 6. Indeed,

---

[1] The Court should not consider any documents outside the four corners of Plaintiffs' Complaint for purposes of ATS' Rule 12(b)(6) motion to dismiss for failure to state a claim. *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1023 (N.D. Ill. 2008) ("It is well-established … that with respect to a motion under Rule 12(b)(6), the court can only consider the allegations made within the four corners of the complaint.").

customers can move and use ATS' products anywhere they choose, including across state lines. *See* Gladysz Decl., ¶ 6. Customers also have complete control over the decision whether to utilize the fingerprint scanning feature available on certain of ATS' time collection devices. *See* Gladysz Decl., ¶ 7. Thus, ATS has no say in whether, where, or how its customers collect time keeping data. *See* Gladysz Decl., ¶ 8.

ATS develops and markets its time collection hardware, software, and comprehensive cloud-based integration solutions throughout the world, through its globally accessible website and does not purposefully direct sales, advertising or marketing to potential clients in Illinois. Gladysz Decl., ¶ 4; *see also* Reply Declaration of Lisa Gladysz [Dkt. 29-1], ¶ 2, attached hereto as Exhibit C ("Gladysz Reply Decl."). Indeed, ATS' services are largely provided remotely, on a nationwide basis, from ATS' Virginia-based servers, and are not directed to Illinois. Gladysz Reply Decl., ¶ 6. The services ATS provides to its customers have absolutely no relationship to Illinois. Gladysz Reply Decl., ¶ 6.

ATS' only contact within Illinois is with its direct customers who may have some operations in this state, *i.e.*, with employers and not end users. Gladysz Reply Decl., ¶¶ 4-5. Importantly, during the relevant period, ATS had *no* customers using biometrics who were based in Illinois. Gladysz Reply Decl., ¶ 5. Rather, at all relevant times, *all* of ATS' biometric customers were *headquartered outside of Illinois* and subscribed to a *nationwide* (or broader) service arrangement, independent of any contacts to Illinois. Gladysz Reply Decl., ¶¶ 3-4. For instance, while ATS did sell timeclocks to Plaintiffs' employer (which was unnamed in the Complaint, but discovered thorough subsequent briefing), Ecolab, that engagement stemmed from agreements entered into between ATS and Ecolab *in Minnesota* for the provision of goods and services across North America (i.e., not specific to Illinois). Gladysz Reply Decl., ¶ 3. Accordingly, the foregoing

undisputed, case-dispositive facts confirm that ATS' attenuated contacts with Illinois are insufficient to establish personal jurisdiction.

### C.    **Procedural Posture**

In response to the Complaint, ATS filed its initial Motion to Dismiss, or In the Alternative, to Stay the Proceedings, on November 1, 2021 [Dkt. 15] (the "Original Motion to Dismiss"), seeking to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Thereafter, on November 11, 2021, Plaintiffs moved for leave to conduct expedited jurisdictional discovery as to the Rule 12(b)(2) issues raised in the Original Motion to Dismiss [Dkt. 19], which the Court granted on December 3, 2021 [Dkt. 20]. Following extensive jurisdictional discovery and the parties' briefing of the Original Motion to Dismiss, the Court entered an Order (1) staying the case pending the Illinois Supreme Court's rulings on two then pending cases: *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021) ("*Cothron*"), and *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563, 451 Ill. Dec. 879, 184 N.E.3d 466, 473 (2021), cert. granted, 452 Ill. Dec. 48, 184 N.E.3d 1029 (2022) ("*Tims*"), and (2) denying the motion to dismiss without prejudice [Dkt. 32].

The Illinois Supreme Court recently issued its rulings in *Tims* and *Cothron*. *See Tims v. Blackhorse Carriers, Inc.*, 2023 IL 127801 (Feb. 2, 2023) (holding that BIPA claims are subject to a five-year statute of limitations); *Cothron v. White Castle Systems, Inc.*, 2023 IL 128004 (Feb. 17, 2023) (holding that BIPA claims accrue after each biometric scan). Following these rulings, the Court entered an Order lifting the stay and directing ATS to respond to the Complaint by March 15, 2023 [Dkt. 35].

Because the deficiencies raised in ATS' Original Motion to Dismiss remain, ATS submits this Renewed Motion, requesting that the Court enter an order dismissing Plaintiffs' Complaint with prejudice.

34976624.3

## II.    ARGUMENT

### A.    Plaintiffs' Complaint Should be Dismissed for Lack of Personal Jurisdiction

An action against a party over whom the Court lacks personal jurisdiction must be dismissed.  *See* Fed. R. Civ. P. 12(b)(2); *Primack v. Pearl B. Polto, Inc.*, 649 F. Supp. 2d 884, 887 (N.D. Ill. 2009).  A court may exercise specific personal jurisdiction over a defendant only when: "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [it]self of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities."  *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705-06 (7th Cir. 2019) (internal citations omitted).  Because neither the Complaint's allegations nor the evidence obtained through jurisdictional discovery establish that ATS purposefully directed its activities at Illinois, or that Plaintiffs' purported injuries arose from any contacts ATS created with Illinois, specific jurisdiction is lacking and the Complaint should be dismissed.

#### 1.    *ATS Has Not Purposefully Availed Itself of the Privilege of Doing Business in Illinois*

As the evidence obtained through jurisdictional discovery confirms, ATS has not purposefully directed its activities at Illinois.  This case is not comparable to cases in which courts have found personal jurisdiction existed over a third-party vendor that entered into a contract to provide software to a company that primarily operates in Illinois.  *See Fisher v. HP Prop. Mgmt., LLC*, 195 N.E.3d 343, 350 (2021) (defendant entered into a business relationship with a company that operated exclusively in Illinois).  Rather, ATS' contact with Plaintiffs' employer arose from an agreement executed in **Minnesota**, under which ATS was to provide goods and services across all of **North America**.  An agreement with a company to provide services to multiple locations nationwide does not establish the requisite minimum contacts to invoke specific personal jurisdiction.  *Salkauskaite v. Sephora USA, Inc.*, No. 18-cv-08507, 2020 WL 2796122, at *4-5

34976624.3

(N.D. Ill. May 30, 2020) (defendant's sale of augmented reality software to Sephora, a company that has numerous locations nationwide, was insufficient to establish specific personal jurisdiction for plaintiff's BIPA claim).

Nor is this a case in which ATS' business operations center around or rely upon its contacts with Illinois. *King v. PeopleNet Corp.,* No. 21-cv-2774, 2021 WL 5006692, at *6 (N.D. Ill. Oct. 28, 2021) (defendant's business "centered on scanning Illinois employees' biometric information and handling the resulting data"). Indeed, the majority of ATS' customers come to ATS by way of third-party referrals, not requiring any specific outreach by ATS to persons located in Illinois. *See* Gladysz Reply Decl., ¶ 5. Moreover, during the relevant period, **all** of ATS' biometric customers were headquartered outside of Illinois and subscribed to a nationwide (or broader) service arrangement, independent of any contacts to Illinois. *See* Gladysz Reply Decl., ¶¶ 3-4. Such inadvertent, attenuated contact with Illinois does not warrant exercising personal jurisdiction over ATS in Illinois. *See Gutierrez v. Wemagine.AI LLP,* 2022 WL 6129268, at *1 (N.D. Ill. Oct. 7, 2022) (dismissing plaintiff's BIPA class action where there was no evidence that defendant purposefully directed any of its conduct toward Illinois, conducted any Illinois-specific shipping, marketing or advertising, or sought out the Illinois market in any way); *see also Bray v. Lathem Time Co.*, 2020 WL 1492742, at *4 (C.D. Ill. Mar. 27, 2020) (no personal jurisdiction over defendant that was incorporated and headquartered outside of Illinois, did not maintain property, employees or any other physical presence in Illinois, did not advertise or market in Illinois, and sold plaintiff's employer a biometric timeclock outside of Illinois, which ended up in Illinois); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (personal jurisdiction lacking where defendant's services were available in Illinois but did not specifically target the Illinois market); *McGoveran v. Amazon Web Services*, 488 F. Supp. 3d 714, 721 (S.D. Ill. 2020) (dismissing plaintiff's BIPA

claim for lack of personal jurisdiction where there was "no indication that [defendant] ever reached into Illinois via telephonic or electronic means to commit an intentional tort").

       2.       *Plaintiffs' Alleged Injuries Did Not Arise Out of ATS' Conduct in Illinois*

It is the defendant's "suit-related conduct" and connection to the forum state, **not** the location where the plaintiff experienced a particular injury, that determines whether specific jurisdiction exists. *Telemedicine Solutions LLC v. WoundRight Technologies, LLC*, 27 F. Supp. 3d 883, 890 (N.D. Ill. 2014); *Stein v. Clarifai, Inc.,* 526 F. Supp. 3d 339, 343 (N.D. Ill. 2021) (internal citations omitted). Indeed, the conduct alleged by Plaintiffs (*i.e.,* the use of ATS' timekeeping devices by Plaintiffs' unnamed employer) is not the result of contact with Illinois that ATS created, but rather the result of purported decisions by Plaintiffs' alleged employer to both use ATS devices in Illinois and require Plaintiffs to provide biometric data.

Unlike the facts alleged in complaints where courts have denied motions to dismiss BIPA claims, Plaintiffs' Complaint does not allege that ATS engaged in any intentional conduct in Illinois which caused Plaintiffs' purported injury. *See, e.g., Smith v. Signature Sys. Inc.,* Case No. 21-cv-02025, 2022 WL 595707, at *4 (N.D. Ill. Feb. 28, 2022) (complaint which alleged that the third-party software vendor scanned and collected copies of its client's employees' fingerprints and subsequently compared them to those stored in its database properly alleged the defendant took active steps to collect the plaintiffs' biometric data); *see also Ronquillo v. Doctor's Associates, LLC,* 597 F. Supp. 3d 1227, 1230 (N.D. Ill. 2022) (plaintiffs alleged that defendant required franchisees, which employed the plaintiffs, to use its proprietary biometric scanning hardware and software). Nor is this a case in which the defendant actively used its technology to collect and profit off of users' biometric information. *See, e.g., Crumpton v. Haemonetics Corp.,* 595 F. Supp. 3d 687, 693 (N.D. Ill 2022) (defendant third-party vendor charged licensing and

hosting fees per "procedure" – meaning that each time a user initiated a screening interview through his/her fingerprint, the vendor was owed additional money).

Rather, (1) ATS sells its products nationwide; (2) ATS' sale of its devices to Plaintiffs' employer arose from a contract outside of Illinois; (3) ATS has no connection to the individual end users of its products; (4) ATS does not generally track or control its products once they have been purchased; and (5) ATS does not control how or where its products are used, including as to the fingerprint scanning feature available on some of ATS' devices. *See* Gladysz Decl., ¶¶ 3, 6-8. Because the Plaintiffs' alleged injury arose out of their employer's, not ATS', Illinois-based actions, personal jurisdiction is lacking as to ATS. *Bray*, 2020 WL 1492742, at *4 (because the defendant's only "contact" with Illinois "occurs when its customers – employers, not end users – reach out to purchase its products and services," the plaintiff's "injury stems not from the contact but from the employer's subsequent use of [the defendant's devices], which take place wherever and in whatever manner the employers choose."); *Stein,* 526 F. Supp. 3d, at 344-45 (no personal jurisdiction over a technology company that used OKCupid profiles to create a facial recognition algorithm, which it sold to two Illinois customers through an interactive, non-targeted website); *Advanced Tactical Ordinance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-802 (7th Cir. 2014) (holding that when looking into online sales, there must be some evidence linking defendants to the allegedly tortious activity; otherwise, a plaintiff "could bring suit in literally any state where the defendant shipped at least one item").

Where the defendant does not engage in or control the conduct that led to the alleged injury, there is no personal jurisdiction over the defendant and the Complaint should be dismissed. *See Gutierrez,* 2022 WL, at *2 (plaintiffs downloading, paying for, and using the defendant's application in Illinois was insufficient to create a basis for personal jurisdiction); *see also Stein,*

526 F. Supp., at 344 (defendant's "contacts with Illinois must come from its suit-related activity in the forum state, not from the activity of a third party").

**B.    Plaintiffs' Complaint Fails to State an Actionable BIPA Claim**

Because a claim is only facially viable "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Plaintiffs' Complaint, which amounts to a mere "formulaic recitation of the elements of" a BIPA claim, cannot survive a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

1.    *Plaintiffs Fail to Allege that ATS was in "Possession" of Their Biometric Data*

In order to assert a claim under Sections 15(a), (c), and/or (d) of BIPA, the plaintiff must allege that the defendant was "in possession" of her biometric data. 740 ILCS 14/15(a), (c)-(d). The Illinois Supreme Court has held that "possession…occurs when a person has or takes control of the subject property or holds the property at his or her disposal." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020) (quoting *People v. Ward*, 215 Ill. 3d 317, 325 (2005).

Plaintiffs' Complaint does not even claim that ATS "possessed" their biometric data – as the only reference in the Complaint to the "possession" of biometric data is a generic statement in that "BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention … policy." *See* Compl., ¶ 54. Merely parroting the statutory language of BIPA without making any factual allegations as to ATS' possession of Plaintiffs' biometric data is not sufficient to survive a Rule 12(b)(6) motion to dismiss. *See Heard,* 440 F. Supp. 3d, at 968 (dismissing plaintiff's BIPA claim which failed to allege that the defendant exercised any dominion or control over his biometric data); *see also Jones v. Microsoft Corp.,* No.

22-cv-3437, 2023 WL 130495, at *4-5 (N.D. Ill. Jan. 9, 2023) (dismissing plaintiff's § 15(d) claim because "her allegations regarding disclosure, redisclosure, or dissemination parrot BIPA's language" and failed to "allege that [defendant] disseminated her biometric data to any third-party data centers or any tangible third parties whatsoever"). Because the Complaint is devoid of any allegations concerning ATS' purported "possession" of Plaintiffs' biometric information, Plaintiffs have failed to plead actionable claims with respect to Sections 15(a), (c) and (d) of BIPA. *Jacobs v. Hanwha Techwin America, Inc.*, 2021 WL 3172967, at *3-4 (N.D. Ill. July 27, 2021) (plaintiff's complaint did not properly allege that the defendant possessed the plaintiff's biometric data because it did not assert facts which would show that the defendant freely accessed the biometric data or how the defendant received the data).

2. *Plaintiffs Fail to Allege that ATS "Collected" Plaintiffs' Biometric Data*

Section 15(b) of BIPA applies to entities that "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data. 740 ILCS 14/15(b). To state an actionable claim under Section 15(b), the plaintiff must allege sufficient facts which would allow the court to determine that the defendant itself "collected, captured, or otherwise obtained [the plaintiff's] biometric information." *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285-86 (N.D. Ill. 2019).

Courts consistently dismiss Section 15(b) claims when the complaint fails to allege that the defendant took an active step in collecting the plaintiff's biometric data. *See, e.g., Heard,* 44 F. Supp. 3d at 966-68 (dismissing plaintiff's 15(b) claim as he "repeatedly allege[d] that BD 'collected' his biometric data without alleging how, when, or any other factual detail," and finding that the plaintiff's allegations "'merely parrot' the BIPA's statutory language," as they did not provide "any specific facts to ground…legal claims"); *see also Namuwonge*, 418 F. Supp. 3d at 285-86 (dismissing Section 15(b) claim because the plaintiff did not plausibly allege that the defendant scanner manufacturer itself "collected, captured, or otherwise obtained [plaintiff's]

34976624.3

biometric information," and it was clear from the complaint that the employer collected the data using a system provided by the technology-provider defendant); *see also Jacobs,* 2021 WL, at \*2-3 (dismissing plaintiff's Section 15(b) claim upon finding that in order for Section 15(b) to apply, "an entity must, at a minimum, take an active step to collect, capture, purchase, or otherwise obtain biometric data").

Rather than explain how ATS purportedly "collected" their biometric information, Plaintiffs simply allege that they purportedly "performed duties for one of ATS' clients" and that the equipment required them to scan their fingerprint into an ATS biometric system.[2] *See* Compl., ¶¶ 37-38. By failing to allege any steps that ATS took to affirmatively "collect" their biometric data, Plaintiffs fail to adequately plead their Section 15(b) claims. *See Doe by & through Doe v. Apple Inc.,* No. 3:20-cv-421-NJR, 2022 WL 17538446, at \*5 (S.D. Ill. Aug. 1, 2022) ("it is difficult to imagine a scenario where an entity could 'collect' biometric data without taking affirmative steps to do so"); *Jacobs*, 2021 WL at \*3 ("[p]laintiff has not sufficiently pleaded that defendant took any active steps to collect biometric data.").

Moreover, merely alleging that their (unnamed) employer acquired ATS products, which the employer subsequently used to collect Plaintiffs' biometric data, is not enough to establish that ATS "collected" or "received through trade" Plaintiffs' biometric data. *Jones,* 2023 WL, at \*4 (Microsoft did not receive plaintiff's biometric data "through trade" but rather, "received money in exchange for access to its product, not biometric data"); *Heard*, 440 F. Supp. 3d at 967 (because the complaint only alleged that his employer required him to scan his fingerprint, but did not allege how the data made its way into the defendant's systems, the plaintiff did not state a claim for relief under Section 15(b)); *Namuwonge,* 418 F. Supp. 3d, at 286 (rejecting as insufficiently pled under

---

[2] In *Heard,* the plaintiff at least identified the name of his employer. Here, Plaintiffs have not specified either the name of their employer or the ATS "client" to which their Complaint references.

Section 15(b) a complaint alleging that "Brookdale collected the fingerprints using a system that Kronos supplied to Brookdale" because, without more, "these allegations do not plausibly allege that Kronos collected, captured, or otherwise obtained Namuwonge's biometric information").

Because Plaintiffs' Complaint merely recites the statutory language of Section 15(b) without asserting any factual allegations regarding ATS' conduct, Plaintiffs' Section 15(b) claims should be dismissed.

III.    **CONCLUSION**

For the foregoing reasons, Defendant ATS respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

**ACCU-TIME SYSTEMS, INC.**

By: /s/ Sonya Rosenberg
                    By Its Attorneys

34976624.3

Sonya Rosenberg
srosenberg@nge.com
Alexis M. Dominguez
adominguez@nge.com
Alissa J. Griffin
agriffin@nge.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL 60602-3801
(312) 269-8000

Andrew M. Zeitlin (admitted *pro hac vice*)
azeitlin@goodwin.com
SHIPMAN & GOODWIN LLP
300 Atlantic Street, 3rd Floor
Stamford, CT 06901-3522
(203) 324-8111

*Counsel for Defendant Accu-Time
Systems, Inc.*

Dated: March 15, 2023

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that I have this 15th day of March, 2023, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to all counsel of record.


                          /s/ Alexis M. Dominguez

34976624.3