IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDNA FRANCHINI and VALERIE SEALS, <br><br> Plaintiffs, <br><br> v. <br><br> ACCU-TIME SYSTEMS, INC., <br><br> Defendant. | Case No. 1:21-cv-05075 <br><br> Honorable Steven C. Seeger |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
<u>RENEWED MOTION TO DISMISS</u>**

Plaintiffs' Response is, once again, replete with assertions that either are unsupported by the record evidence, or concern matters which are not relevant to the issues presently before the Court—namely, whether: (1) ATS has sufficient minimum contacts to warrant personal jurisdiction in Illinois, and (2) Plaintiffs have sufficiently pled a claim under Section 15 of BIPA. As set forth in ATS' opening Motion and further explained below, each of the foregoing issues should be decided in ATS' favor.

Contrary to Plaintiffs' assertions, exhaustive discovery on the personal jurisdiction issue confirms the following undisputed facts, which evidence that personal jurisdiction is lacking:

- ATS is incorporated in the Commonwealth of Pennsylvania, and has its principal place of business in Windsor, Connecticut. (Motion, Ex. B, ¶ 3.)

- ATS develops and markets time collection hardware, software and comprehensive cloud-based integration solutions to customers throughout the world, through its globally accessible website. (*Id.* at ¶ 4.)

- ATS sells its devices and services to customers, who then use them for their own businesses. (*Id.* at ¶ 5.) ATS has *no connection whatsoever* to the individual end users of its products. (*Id.*). In addition, ATS generally does not track or control its products once they have been purchased. (*Id.* at ¶ 6.)

- Rather, ATS' customers have complete control over whether, where and how to utilize

- the fingerprint scanning feature available on certain of ATS' time collection devices, including with respect to the collection of timekeeping data. (*Id.* at ¶¶ 6-8.)

- Further, ATS can move and use ATS' products anywhere they choose, including across state lines, without ATS' knowledge. (*Id.* at ¶ 6.)

- In addition, ATS has no employees in Illinois, does not own any physical property in Illinois, does not sell products in any physical locations in Illinois, does not conduct any advertising or marketing directed to customers in Illinois, does not regularly send Company representatives to Illinois and does not maintain a bank account or other financial accounts in Illinois. (*Id.* at ¶¶ 9-14.) No ATS employees have set foot in Illinois for ATS business since at least October 2017. (*Id.* at ¶ 15.)

- The services ATS provides to its customers have absolutely no relationship to Illinois and are largely provided remotely, on a nationwide basis, from ATS' Virginia-based servers. (Motion, Ex. C, ¶ 6.)

- At all relevant times, all of ATS' biometric customers were headquartered outside of Illinois and subscribed to a nationwide (or broader) service arrangement, independent of any contacts to Illinois. (*Id.*, ¶¶ 3-4.)

- Indeed, ATS' engagement with Plaintiffs' employer, Ecolab (which was unnamed in the Complaint, but discovered through subsequent briefing), stemmed from agreements entered into between ATS and Ecolab in Minnesota for the provision of goods and services across all of North America. (*Id.*, ¶ 3.)

Notwithstanding the foregoing undisputed, case-dispositive facts concerning ATS' attenuated contacts with Illinois, Plaintiffs' Response invokes conduct unrelated to Plaintiffs' purported injury, as well as the actions of third parties, in a failed attempt to establish personal jurisdiction. Because Plaintiffs' arguments are misplaced, the claims asserted against ATS should be dismissed for lack of personal jurisdiction.

Moreover, Plaintiffs' BIPA claims should be dismissed due to Plaintiffs' failure to adequately plead a violation of Section 15 of BIPA. Specifically, Plaintiffs have done little more than parrot back a recitation of the elements of a BIPA claim. There are no details in the Complaint to explain how or when ATS purportedly has come to possess or control Plaintiffs' biometric information.

Finally, it should be noted that following the Court's Order lifting the stay of this matter

-2-

[Dkt. 35], the defendant in *Cothron v. White Castle System, Inc.*, filed a Petition for Rehearing with the Illinois Supreme Court. In the event that the Petition for Rehearing is granted, ATS intends to file a renewed motion to stay the proceedings pending the resolution of *Cothron*, as the outcome of that case has significant implications on the potential damages available in this case.

## I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

The credible evidence establishes that ATS is not subject to specific jurisdiction in Illinois.[1] Specific jurisdiction exists only where "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [it]self of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Matlin v. Spin Master Corp.,* 921 F.3d 701, 705-06 (7th Cir. 2019). In their Response, Plaintiffs ignore the latter requirement, overstate the extent of ATS' contacts with Illinois, and rely on a number of purported actions that: (1) are unrelated to Plaintiffs' alleged injuries, or (2) were undertaken by third parties and, thus, are not relevant to the specific jurisdiction question. Accordingly, Plaintiffs' Response fails to establish the requisite minimum contacts needed to confer personal jurisdiction over ATS in Illinois.

### A. ATS Does Not Have Sufficient Minimum Contacts with Illinois

Neither the Complaint's allegations nor the evidence obtained in jurisdictional discovery establishes that ATS purposefully directed its activities at Illinois. Rather, the evidence demonstrates that ATS offers a service to clients *globally*, including in *all* U.S. states, without targeting any one of them. Such conduct does not constitute the purposeful availment necessary

---

[1] Plaintiffs' Response does not attempt to argue that ATS is subject to general jurisdiction in Illinois. Plaintiffs' concession is not surprising because general jurisdiction is only met within "the state of the [defendant's] principal place of business and the state of its incorporation." *Kipp v. Ski. Enter. Corp.*, 783 F.3d 695, 698 (7th Cir. 2015). Here, ATS' principal place of business is Connecticut, and its state of incorporation is Pennsylvania. (Motion, Ex. B, ¶ 3.) Thus, there can be no dispute; ATS is not subject to general jurisdiction in Illinois.

to establish personal jurisdiction. *See be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (personal jurisdiction held to be lacking where defendant's services were available in Illinois but did not specifically target Illinois market); *Salkauskaite v. Sephora USA, Inc.,* No. 18-cv-08507, 2020 WL 2796122, at *4-5 (N.D. Ill. May 30, 2020) (defendant's sale of augmented reality software to Sephora, a company that has numerous locations nationwide, was insufficient to establish specific personal jurisdiction for plaintiff's BIPA claim).

Indeed, the leading case on this issue, *Bray v. Lathem Time Co.*, evidences precisely why personal jurisdiction is lacking here. *See* No. 19-3157, 2020 WL 1492742 (C.D. Ill. Mar. 27, 2020). In *Bray*, the plaintiff sought to pursue a BIPA class action against the defendant, a designer and retailer of biometric time keeping systems. The defendant moved to dismiss for lack of personal jurisdiction in Illinois, and the court granted the motion because the defendant lacked sufficient contacts with Illinois to justify the exercise of specific jurisdiction. *Id.* at *4. In particular, the court noted that:

> Lathem is incorporated and headquartered in Georgia; does not have any real estate, accounts, personal property, employees, or physical presence in Illinois; does not target Illinois or purposely directly sales into the state through advertising and marketing or the use of sales or service representatives; and did not even sell a Lathem Device to Bray's employer in Illinois.

*Id.* Thus, the court reasoned that the defendant's only "contact" with Illinois "occurs when its customers—***employers, not end users***—reach out to purchase its products and services" and that the plaintiff's "injury stems not from that contact but from the employer's subsequent use of [the defendant's devices], which take place wherever and in whatever manner the employers choose." *Id.* (emphasis added). As such, the court ruled that the plaintiff's injury did "not stem from Lathem's Illinois contacts and [did] not establish personal jurisdiction." *Id.*

Indeed, like the defendant in *Bray*, ATS is incorporated outside of Illinois, does not have

any real estate, accounts, personal property, employees, or physical presence in Illinois. (Motion, Ex. C, ¶ 2.) Further, ATS' engagement with Ecolab stemmed from agreements entered into between ATS and Ecolab in Minnesota for the provision of goods and services across North America (i.e., not specific to Illinois). (*Id.,* ¶ 3.)

Because this is not a case in which ATS' business relied upon any contacts in Illinois, but rather a case in which ATS' customers come to ATS by way of third-party referrals and not through any outreach by ATS, specific jurisdiction is lacking. Contrast *King v. PeopleNet Corp.,* No. 21-cv-2774, 2021 WL 5006692, at *6 (N.D. Ill. Oct. 28, 2021) (jurisdiction existed where defendant's business "centered on scanning Illinois employees' biometric information and handling the resulting data") against *Gutierrez v. Wemagine.AI LLP*, 2022 WL 6129268, at *1 (N.D. Ill. Oct. 7, 2022) (dismissing a BIPA class action where there was no evidence that defendant purposefully directed any of its conduct towards Illinois or sought out the Illinois market). The limited, attenuated contact ATS has with Illinois is insufficient to establish personal jurisdiction. *Stein v. Clarifai, Inc.,* 526 F. Supp. 3d 339, 344-45 (N.D. Ill. 2021) (no personal jurisdiction over a technology company that used OKCupid profiles to create a facial recognition algorithm, which it sold to two Illinois customers through an interactive, non-targeted website).

### B. Plaintiffs' Alleged Injuries Did Not Arise Out of ATS' Conduct in Illinois

This litigation does not arise out of any contacts ATS created with Illinois. Plaintiffs' Response seeks to exaggerate ATS' link to Illinois by arguing that the Court should apply the reasoning of a few distinguishable decisions that Plaintiffs (incorrectly) maintain are instructive on the issue of personal jurisdiction. Namely, Plaintiffs argue that *Kukovec v. Estee Lauder Companies, Inc.*, a case which found specific jurisdiction over the owner of a geographically neutral Internet site, is comparable. *See* 22-cv-1998, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022). Plaintiffs fail to acknowledge that, unlike ATS, the defendant in *Kukovec* not only employed

Illinois-based workers, but also used its website's virtual "try-on" tool in order to purposefully avail itself of the Illinois cosmetics market. Because the conduct alleged by Plaintiffs – the use of ATS' timekeeping devices by Plaintiffs' unnamed employer (who contracted for the use of the devices in Minnesota) – is not the result of contact with Illinois that ATS created or advocated for, but rather the result of purported decisions by Plaintiffs' alleged employer to both use ATS devices in Illinois and require Plaintiffs to provide biometric data, ATS has not caused any of the Plaintiffs' purported injuries. *See Stein*, 526 F. Supp., at 344 (defendant's "contacts with Illinois must come from its suit-related activity in the forum state, not from the activity of a third party").

Plaintiffs' Response also attempts to analogize this case to entirely distinguishable cases in which defendants have used their technology to collect and profit off of users' biometric information. For example, Plaintiffs cite to *Crumpton v. Haemonetics Corp.*, a case in which the defendant third-party vendor charged licensing fees per "procedure" – meaning that each time a user initiated a screening interview through his/her fingerprint, the vendor was owed additional money. *See* 595 F. Supp. 3d 687, 693 (N.D. Ill. 2022). Plaintiffs fail to account for the fact that ATS has no connection to the individual end-users of its products and does not track or otherwise control its products once they are sold to its customers. (Motion, Ex. B, ¶¶ 5-6.) Therefore, ATS cannot plausibly have caused Plaintiffs' purported injuries. *See, Bray*, 2020 WL 1492742, at *4 (because the defendant's only "contact" with Illinois "occurs when its customers – employers, not end users – reach out to purchase its products and services," the plaintiff's "injury stems not from the contact but from the employer's subsequent use of [the defendant's devices], which take place wherever and in whatever manner the employers choose."); *see also Advanced Tactical Ordinance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-802 (7th Cir. 2014) (holding that when looking into online sales, there must be some evidence linking defendants to the allegedly

tortious activity; otherwise, a plaintiff "could bring suit in literally any state where the defendant shipped at least one item").

### C. It is Not Reasonable to Assert Jurisdiction over ATS in Illinois

Plaintiffs attempt to distract from the foregoing issue-dispositive points by raising a number of inappropriate, misleading and entirely irrelevant assertions.[2] These assertions should be rejected because the "random, fortuitous, and attenuated" contacts Plaintiffs bring up cannot, and do not, confer specific jurisdiction. *See Salkauskaite,* 2020 WL 2796122, at *5 ("Without evidence that ModiFace intended to avail itself of the right to do business in Illinois or purposefully aimed its conduct at Illinois, the use of ModiFace's technology in the forum is at most a random, fortuitous, or attenuated contact.").

First, Plaintiffs ignore that "the fact that [ATS] is registered to do business in Illinois is irrelevant and fails to establish personal jurisdiction." *McGoveran v. Amazon Web Services*, 488 F. Supp. 3d 714, 721 (S.D. Ill. 2020). Plaintiffs also ignore that the actions of any third-party resellers are not attributable to ATS for purposes of personal jurisdiction. *See Bray*, 2020 WL 1492742, at *3 (dismissing for lack of personal jurisdiction where Lathem's "contact with Bray is purely happenstance and the result of the actions of third parties"); *Bernal v. ADP, LLC,* No. 2017-cv-12364, 2019 WL 5028609, at *1 (Ill. Cir. Ct. Aug. 23, 2019) ("there is nothing to suggest that BIPA was intended to apply to situations wherein the parties are without any direct relationship" as doing so "would be unquestionably not only inconvenient but arguably absurd.")

---

[2] Indeed, Plaintiffs' Response seeks to introduce, as affirmative evidence in this matter, the inadmissible hearsay deposition testimony of EcoLab Inc.'s Rule 30(b)(6) corporate representative, in Plaintiff Edna Franchini's separately filed lawsuit against her employer EcoLab Inc. *See* Response, Ex. 2. ATS was not a party to that litigation and did not participate in the deposition in question. Accordingly, pursuant to Federal Rule of Civil Procedure 32(a)(8), Plaintiffs' reliance on such testimony in their Response is improper and should be disregarded by the Court. *See Gamble v. Fiat Chrysler Automobiles*, No. 18 C 4520, 2020 WL 1445611, at *1 n.1 (N.D. Ill. Mar. 25, 2020) ("To the extent that Plaintiff's alleged facts do rely on outside depositions, the Court will not consider them for purposes of this Motion.").

In addition, Plaintiffs incorrectly assert that ATS provides biometric timekeeping services to "approximately 16 Illinois-based employers" (Response, at p. 10), as evidence of minimum contacts, while ignoring that during the relevant period ATS had *no* customers using biometrics who were based in Illinois.[3] (Motion, Ex. C, ¶ 4.) Rather, *all* of ATS' biometric customers were *headquartered outside of Illinois* and had subscribed to a *nationwide* (or broader) service arrangement, independent of any contacts to Illinois. (*Id.* at ¶¶ 3-4.) Plaintiffs further ignore that ATS did not secure its clients that happen to have some Illinois operations as a result of any conduct taken by ATS in Illinois. (*See id.* at ¶ 5.) Rather, the majority of ATS' clients originated from third-party referrals. (*Id.,* at ¶ 5.) Thus, ATS' contacts to Illinois are indirect and based on unilateral decisions and actions of its clients over which ATS lacks any control.

Plaintiffs also incorrectly assert, without any support, that because ATS implemented a BIPA-compliant policy and consent screen on its biometric clocks it "must have anticipated litigation" here. In other words, they essentially argue that actions taken by ATS outside of Illinois for the purpose of complying with Illinois law should subject ATS to jurisdiction here. By this logic, an entity would be subject to jurisdiction anywhere and everywhere if it has taken measures to remain in compliance with applicable law in a given jurisdiction, regardless of that entity's actual contacts (or lack thereof) with the jurisdiction in question. There is zero support for this absurd position (which is why Plaintiffs fail to cite to any), and it should be rejected. *See Gutierrez,* 2022 WL 252704, at *3 (dismissing complaint for lack of personal jurisdiction because the "attenuated contact [at issue] is not sufficient for the Court to exercise personal jurisdiction over Wemagine, and to do so would essentially be to hold that Wemagine is subject to personal

---

[3] Plaintiff also incorrectly, misleadingly equates the percentage of ATS' clients using biometric devices with the total revenue generated from such clients, and likewise grossly overestimates revenue generated therefrom. (Response at p. 4.) There is no basis for this supposition.

jurisdiction in the entire United States, because Viola is available nationwide (as well as internationally)").

Plaintiffs' observation that ATS previously was sued in Illinois similarly bears no relevance to the personal jurisdiction analysis. That prior litigation, *Shelby-Williams v. Amano USA Holding, Inc.*, Case No. 2019-CH-14363 (Cook County, Ill. 2020), pertained to the purported use and collection of biometric data by a third-party, *not* ATS. (Motion, Ex. C, at ¶ 7.) Thus, ATS simply was erroneously named as a defendant in that litigation; and, on realizing this, plaintiffs voluntarily withdrew their complaint against ATS before ATS even submitted a responsive pleading. (*Id.*); *see* Dismissal Order attached as Exhibit 1. That ATS was improperly, erroneously named in and then voluntarily dismissed by plaintiffs in a prior, separate action is completely irrelevant to the personal jurisdiction analysis in this case.

For these reasons, and as set forth in ATS' opening Motion, Plaintiffs' complaint should be dismissed for lack of personal jurisdiction.

## II.     THE COMPLAINT FAILS TO PLEAD AN ACTIONABLE BIPA CLAIM

Plaintiffs' Response also fails to overcome another fundamental flaw with their Complaint – namely, Plaintiffs' failure to allege the requisite factual detail in the Complaint to establish that ATS possessed or collected Plaintiffs' biometric data. Indeed, Plaintiffs' Response and the Complaint's allegations highlighted therein only underscore the conclusory nature of Plaintiffs' Complaint, which Plaintiffs inappropriately try to hide behind by underscoring the federal "notice pleading" standard. But the notice pleading standard does not allow plaintiffs to state a cause of action by merely parroting the elements of applicable legal claims in a conclusory manner, as Plaintiffs have done here. Such allegations patently fail to satisfy *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), which make clear that a claim only is viable "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct allege." *Iqbal*, 129 S. Ct. at 1949. This is because courts "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). Despite Plaintiffs' arguments otherwise, the Complaint lacks the required factual allegations to establish a BIPA claim.

In particular, the Complaint is devoid of any allegations with respect to ATS' purported "possession" of Plaintiffs' biometric information, which is required to establish a violation of Sections 15(a), (c) and (d) of BIPA. The only reference in the Complaint to the "possession" of biometric data is a generic statement in Paragraph 54 that "BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention … policy." (Compl., ¶ 54). Seemingly aware of this fatal pleading deficiency, Plaintiffs do not even attempt to identify a single Complaint allegation addressing ATS' purported "possession" of their biometric information. Instead, they invoke the inapposite case of *Hazlitt v. Apple Inc.*, in which the plaintiffs actually had alleged "that Apple 'possessed' such biometric identifiers or information." *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 652 (S.D. Ill. 2021); (Response, at p. 16). Because courts apply the ordinary meaning of the word "possession" – meaning, "to have control" – when evaluating BIPA claims, Plaintiffs must allege facts (not mere possibilities) which show that the defendant maintained control of their biometric information in order to state an actionable BIPA claim. *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶ 44. Plaintiffs' mere recitation of the statutory language of BIPA, without any allegations as to ATS' possession of any biometric data, fails the notice pleading requirement. *Jones v. Microsoft Corp.*, No. 22-cv-3437, 2023 WL 130495, at *4-5 (N.D. Ill. Jan. 9, 2023) (dismissing plaintiff's § 15(d) claim because "her allegations regarding disclosure, redisclosure, or dissemination parrot BIPA's language" and

failed to "allege that [defendant] disseminated her biometric data to any third-party data centers or any tangible third parties whatsoever").

The Complaint similarly fails to adequately plead that ATS has "collect[ed], capture[d], purchase[d], receive[d] through trade, or otherwise obtain[ed]" biometric information, as required to state a claim under Section 15(b) of BIPA. Instead, the Complaint simply alleges in conclusory fashion that ATS somehow "collected" and "stored" Plaintiffs' biometric data. (Compl., ¶ 13.) The Complaint does not, however, explain "how, when, or any other factual detail" concerning the purported collection of Plaintiffs' biometric data. *See Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) ("Plaintiff has not sufficiently pleaded that defendant took any active steps to collect biometric data."). This omission likely is due to Plaintiffs' use of a boilerplate complaint template intended for use in litigation involving a traditional employee/employer relationship. Indeed, the Complaint is replete with misplaced references to "ATS's failure to inform its employees that it discloses their fingerprint data," despite there being no Complaint allegations (or other evidence) of an employment relationship between Plaintiffs and ATS. (*See* Compl., ¶ 28.)

Plaintiffs seek to distract from the shortcomings of the Complaint by highlighting a number of allegations which they claim satisfy their pleading obligation, but which, in effect, are just mere conclusory recitations of the elements of a BIPA claim. (Response, at p. 13-14.) Tellingly, the majority of the allegations on which Plaintiffs rely do not even pertain to ATS' purported "collection" of biometric information. Instead, Plaintiffs' Response emphasizes ATS' purported "broadcast[ing]" and "disclos[ure]" of biometric information, without actually addressing ATS' collection of such information. (*Id.*) Simply put, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Jacobs*, 2021 WL

-11-

3172967, at *2; *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (rejecting as insufficiently pled under Section 15(b) a complaint allegation that "Brookdale collected the fingerprints using a system that Kronos supplied to Brookdale" because, without more, "these allegations do not plausibly allege that Kronos collected, captured, or otherwise obtained Namuwonge's biometric information").

Moreover, Plaintiffs' reliance on *PeopleNet* and related cases in their Response to argue sufficient notice pleading is misplaced, as the allegations in these cases were significantly more precise and factual in nature than in the instant Complaint. For instance, in *PeopleNet*, the court expressly noted that the complaint alleged that the "Defendant collects, stores, and otherwise uses information and data generated from the timekeeping systems it provided to [King's employer]." *PeopleNet Corp.*, 2021 WL 5006692, at *8. Similarly, in *Neals v. Par Technology Corp.*, the court noted that the complaint alleged "that PAR collected [biometric] information through its customer's use of PAR's system." 419 F. Supp. 3d 1088, 1091 (N.D. Ill. 2019). Here, the Complaint contains no such allegations, and Plaintiffs' efforts to address that deficiency *ex post facto* through motion practice does not cure Plaintiffs' pleading deficiency.

Plaintiffs' Complaint is akin to the complaint in *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020), which the court dismissed because "Heard has not plausibly alleged that BD 'collect[ed], capture[d], purchase[d], receive[d] through trade, or otherwise obtain[ed]' biometric data from Heard or the putative class members." Importantly, the *Heard* court distinguished *PAR Technology Corp.*, a case on which Plaintiffs rely, because the plaintiff in *Heard*, like Plaintiffs here and unlike the plaintiffs in *PAR Technology Corp.*, did "not even allege that [the defendant] collected biometric information" through a customer's use of its device. *Id.* at 967. Similarly, here, the Complaint is devoid of any allegations explaining how Plaintiffs

purportedly were required to have their biometric information collected or captured by ATS through unidentified third parties' use of ATS' time clocks.

Finally, Plaintiffs' new alternative argument, that ATS' witness in jurisdictional discovery somehow explained "how the collection and possession" of biometric data occurs, fails to cure the fundamental deficiency in their complaint. The singular case on which Plaintiffs rely – *Geinosky v. City of Chicago*, 675 F.3d 743, 745, fn. 1 (7th Cir. 2012) – for the proposition that "a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove" is taken out of context and readily distinguished. In *Geinosky*, the Court permitted the consideration of a newly published newspaper article because it directly supported the factual allegations already set forth in the plaintiff's complaint. 675 F.3d, at 745. However, Plaintiffs fail to mention that while *Geinosky* recognizes some limited flexibility to the four-corners of the complaint doctrine, "this flexibility is not without limitations." *Bruno v. Glob. Experience Specialists, Inc.,* No. 19-cv-06710, 2020 WL 5253139, at *3 (N.D. Ill. Sept. 3, 2020). In particular, Plaintiffs ignore that this narrow exception does not excuse a factually inadequate complaint, and it certainly "does not give plaintiffs carte blanche to amend a complaint through a response brief." *Id.* Accordingly, Plaintiffs' belated attempt to make up for the Complaint's inadequacies is unpersuasive, procedurally impermissible, and should not be given further consideration.

### III.  THIS CASE SHOULD BE STAYED IF REHEARING IS GRANTED IN *COTHRON*

In addition to the foregoing, since the Court's Order [Dkt. 35] lifting the stay in this matter based, in part, on the Illinois Supreme Court's recent opinion in *Cothron v. White Castle Systems, Inc.,* 2023 IL 128004 (Ill. Feb. 17, 2023), a petition for rehearing has been filed in *Cothron*, which, if granted, warrants a further stay of these proceedings. In particular, on March 10, 2023, White

Castle Systems filed its Petition for Rehearing of the Illinois Supreme Court's Opinion. A copy of the Petition for Rehearing is attached hereto as Exhibit 2. If the Illinois Supreme Court grants rehearing in *Cothron*, ATS intends to submit a renewed motion to stay the proceedings because, for the reasons set forth in ATS' original Motion to Dismiss [Dkt. 16] and its Reply in support thereof [Dkt. 29], *Cothron* will have a significant impact on the size of the putative class and the potential damages available to Plaintiffs and members of the putative class.

WHEREFORE, Defendant Accu-Time Services, Inc. respectfully requests that this Court enter an order dismissing Plaintiffs' Complaint in its entirety with prejudice, requiring Plaintiffs to pay ATS' attorneys' fees and costs expended in connection with this Motion, and granting such other and further relief as the Court deems appropriate.

-15-

                Respectfully submitted,

                **ACCU-TIME SYSTEMS, INC.**

                By: /s/ Sonya Rosenberg
                    By Its Attorneys

Sonya Rosenberg
srosenberg@nge.com
Alexis M. Dominguez
adominguez@nge.com
Alissa J. Griffin
agriffin@nge.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL 60602-3801
(312) 269-8000

Andrew M. Zeitlin (admitted *pro hac vice*)
azeitlin@goodwin.com
SHIPMAN & GOODWIN LLP
300 Atlantic Street, 3rd Floor
Stamford, CT 06901-3522
(203) 324-8111

*Counsel for Defendant Accu-Time Systems, Inc.*

Dated: March 31, 2023

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this 31st day of March, 2023, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to all counsel of record.

/s/ Alexis M. Dominguez

35031976.3