IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDNA FRANCHINI and VALERIE SEALS, *individually and on behalf of all others similarly situated,*<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>ACCU-TIME SYSTEMS, INC.,<br><br>　　　　　　Defendant. | Case No. 1:21-cv-05075<br><br>Hon. Steven C. Seeger |

# PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF
# <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

David Fish
Mara Baltabols
Workplace Law Partners, P.C.
155 N. Michigan Ave., Suite 719
Chicago, IL 60601
(312) 861-1800
dfish@fishlawfirm.com
mara@fishlawfirm.com

*Attorneys for Plaintiffs and
Others Similarly Situated*

I.   **Introduction**

On August 19, 2021, Plaintiffs Edna Franchini and Valerie[1] Seals (collectively "Plaintiffs") filed a putative class action complaint against Defendant Accu-time Systems, Inc. ("ATS" or "Accu-time" or "Defendant") in the Circuit Court of Cook County, Illinois, alleging that Defendant committed multiple violations of BIPA. Defendant removed the action to this Court. ECF 1. In their Complaint, Plaintiffs alleged that Defendant collected their fingerprints through a finger-scan timeclock without providing them with the requisite disclosures or obtaining informed written consent. This case was different from most BIPA cases because it was not against an employer—ATS was the technology vendor that the Plaintiffs' employers hired to manager timekeeping.

After nearly four years of litigation, the Parties participated in a mediation with the Honorable Judge Morton Denlow (Ret.), leading to the Settlement described herein. Defendant has agreed to pay $1,500,000.00 into a non-reversionary Settlement Fund to be distributed to a Settlement Class estimated to be 12,000 individuals.

By this Motion, Plaintiffs request permission to send notice to putative Class Members to notify them of the Settlement and see if anyone objects or wishes to exclude themselves from the Settlement. Plaintiffs respectfully request that the Court grant this motion for preliminary approval, certify the proposed Settlement Class, appoint Plaintiffs' attorneys as Class Counsel, direct that the proposed Notice be disseminated to the Settlement Class, and set a Final Approval Hearing.

II.  **Plaintiffs' Allegations and Defendant's Defenses**

As alleged in the Complaint, Plaintiffs scanned their fingerprint for one of Defendant's Illinois-based client companies. They were required to scan at least one fingerprint to track their identity for timekeeping. Plaintiffs allege that Defendant failed to comply with BIPA's requirements

---

[1] For Plaintiff "Valerie Seals," her first name was misspelled in the Complaint and Settlement; her first name is properly spelled "Valarie," and she requests approval as a class representative under her legal name "Valarie Seals."

when they collected their fingerprint data. Specifically, they allege that Defendant violated the BIPA by (a) failing to develop a publicly available data-retention policy and guidelines for permanently destroying biometric data, and (b) collecting, using, and storing biometric data without obtaining informed written consent. Defendant, for its part, denies Plaintiffs' allegations.

**III.     Risks of Litigation**

Significantly, here, Defendant had many defenses available:

*First*, Defendants would assert that many Class Members clicked to accept ATS's on-screen electronic consent disclosing the collection of biometrics and signed separate consent forms with their direct employers that utilized the ATS system. Here is an example of what ATS asserted was displayed to many Class Members:



While Plaintiffs argued this disclosure was not BIPA compliant, it represented a risk and one that Defendant argued meant the claims were entirely barred. The use of an "electronic consent" only was allowed effective as of the date of the BIPA amendments, August 2024. *See* 740 ILCS 14/10 "written release" definition to include "electronic signature."). The amendment *added* electronic signature to the release where it was not before.[2] Arguably, the BIPA amendment is not

---

[2] 2023 Illinois Senate Bill No. 2979 Illinois One Hundred Third General Assembly - Second Regular Session, 2023 Illinois Senate Bill No. 2979 Illinois One Hundred Third General Assembly - Second Regular Session

retroactive, but this was a potential issue and a factor in settlement.

*Second*, ATS's direct liability as a vendor of the timekeeping system remained contested. ATS claimed that it was just a technology vendor for employers and that the employing entity (ATS's clients) collected the biometric data. Plaintiffs maintained that ATS was required to obtain its own consent form. This was a factor because some courts issued unfavorable rulings on the issue when vendors were sued. *See e.g, Popoca v. Paylocity Corp.,* No. 2020CH06817 (Cook Cty. Apr. 22, 2025) at 6 (dismissing BIPA §§ 15(a), (c), and (d) claims with prejudice for failure to plead possession)*; Ragsdale v. Paycor, Inc., Case No.* 2017CH13911 (Cook Cty. Sept. 5, 2024) (granting summary judgment as "Plaintiffs have not shown that Paycor… possessed their biometric data.")

*Third*, in BIPA litigation, many issues such as the applicable statute of limitations (*Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801) and the liability standard have been decided in prior appeals (*Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 36, 129 N.E.3d 1197). However, appeals continue to be filed. This Settlement was reached pending a decision by the Seventh Circuit in *Svoboda v. Amazon*, Case No. 25-8001, on the issue of whether a class action is superior to individual actions in cases seeking "per scan" damages under BIPA.

IV. **Summary of Settlement Terms**

    A. **The Proposed Settlement Class**
        (Ex. 1, Settlement Agreement, § 1.27)

The Settlement Class consists of all individuals who used the alleged biometric collection technology described in the Complaint filed in this Action at one of the following businesses (hereinafter "Defendant's Customers") in Illinois during the Class Period:

| |
|---|
| Aclara |
| Ansira Partners |
| Ardent Mills |
| Benchmark |
| Bob's Discount Furniture |

3

| |
|---|
| Ecolab |
| Enova |
| Fellowes |
| Ferguson |
| Fresh Express |
| H&E Equipment (OneSource) |
| Hello Fresh |
| Ilitch (LCS/Blue Line/Little Caesars) |
| Montage |
| Patagonia |
| Ring Container |
| Scotts Miracle Grow |
| Societe General |
| TD Synnex |
| Van Pool |
| Victaulic |
| Waste Connections |
| World Fuel Services |
| XPEL |

These companies are the twenty-four (24) ATS clients who employed the Class Members and used the alleged biometric technology at issue in the lawsuit.

**B.  Settlement Fund; Allocation of the Fund; Payments to Class Members; Non-Monetary Relief**
(Ex. 1, Settlement Agreement, §§ 1.27 and 1.29)

While denying all liability and wrongdoing, Defendant will pay a gross Settlement Fund of $1,500,000 to resolve the claims in this case on a class action basis. The "Gross Fund" is the amount that Defendant shall pay under this Settlement. The Parties reasonably estimate that there are ~12,000 individuals in the Class. This is subject to confirmation from Defendant's Customers.

The "Net Fund" is the gross Settlement Fund minus the following deductions, which are subject to Court approval: Settlement Class Counsel's attorney fees and costs; the Settlement Administrator's Expenses; the Plaintiffs' Service Awards; and any other payments made associated with the Settlement. Payments will be made from the Net Fund pro rata for each Class Member that

4

timely returns a valid claim ("Class Participants"). This Settlement has a claims-made structure with no reversion, so the full Net Fund will be distributed to Class Members who submit valid and timely claims forms; no money will be returned to the Defendant.

The gross allocation per person is $125.00 ($1.5 million / 12,000 people). This amount is lower than usual in BIPA cases against employers but in line with cases that have been settled against technology vendors. Here is a summary of BIPA technology vendor case settlements:

| Case Name | Per Person Allocation |
|---|---|
| *Jackson v. UKG Inc., f/k/a The Ultimate Software Group, Inc*, 2020L31 (McLean Cty, IL) | $44 |
| *Figueroa et al v. Kronos Inc.*, 1:19-cv-01306 (NDIL) | $89 |
| *Felipe Bernal, v. ADP LLC*, 2017-CH-12364 (Cook Cty, IL) | $78 |
| *LaBarre v. Ceridian*, 19-CH-06489 (Cook County, IL) | $247 |
| *Villagomez v. iSolved*, 19-cv-05660 (N.D. Ill) | $290 |
| *Neals v. ParTech*, 19-cv-05660 (ND ILL) | $222 |
| *Fisher v. Macron*, 19-CH-14082 (Cook County, IL) | $385 |

The number of claims submitted will affect the per-person payment, with a lower claims rate resulting in a higher per-person payment.[3]

A unique aspect of the settlement is that Plaintiffs are *not* releasing claims against their direct employers. (*See* Section 1.22, excluding Defendant's Customers from the release). As such, to the extent the claims are viable, Class Members may seek a separate recovery from a direct employer.

C. **Uncashed Checks Will Be Distributed to a Cy Pres Recipient**
(Ex. 1, Agreement, § 2.1(h))

Settlement Class Participants will have 120 days to cash their settlement payments. Funds

---

[3] Although hard to predict, Plaintiffs anticipate a claims rate of between 15% and 30% based upon experience in settling similar BIPA cases of a similar structure. The median claims rate in class settlements is approximately 9%. *See* Federal Trade Commission, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, p. 11 (Sept. 2019), available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (median claims rate for settlements studied was 9%).

from checks not cashed by the deadline will be distributed to Prairie State Legal Services as the *cy pres* recipient. However, Plaintiffs expect few uncashed checks because Settlement Class Participants must first submit a claim form to receive payment and can elect to receive electronic payment, which obviates the need to cash a check.

**D.  Defendant's Representations of Compliance with the BIPA**
    (Ex. 1, Settlement Agreement, § 2.2)

As part of the Settlement, Defendant represents that it now maintains BIPA-compliant consents and policies applicable to users of their timeclocks and/or require their customers to do so, and that Defendant is in all respects compliant with BIPA.

**E.  Release of Claims**
    (Ex. 1, Settlement Agreement, §§ 1.21, 1.22, 3.1)

Settlement Class Members who do not exclude themselves will release the Released Parties from claims relating to or connected with the alleged collection, capture, storage, use, profit from, possession, transmission, dissemination and/or disclosure of biometric identifiers and/or biometric information as detailed in the Settlement Agreement. As discussed above, Class Members retain their right to sue their direct employers and any resellers, including Paycom. Ex. 1, § 1.22.

**F.  Notice of Class Action Settlement and Claim Form**
    (Ex. 1, Settlement Agreement, §§ 1.5, 1.17, 4.1 and Ex. A & B)

Among other things, Plaintiffs' proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how to request payment, exclusion, or submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and service awards; and (6) the Final Approval Hearing details. The Parties have selected Analytics Consulting, LLC to act as the Settlement Administrator. The Claim Form will be

provided with the Notice. The proposed Claim Form is simple and easy to complete. The Claim Form explains how individuals can also return a Claim Form through the Settlement website.

The Settlement website, anticipated to be www.accubipasettlement.com, will also have the Notice and Claim Forms, the Settlement Agreement, the Preliminary Approval Order, the Motion for Attorney Fees, Costs, and Settlement Class Representatives' Service Awards (once available), the Motion for Final Approval (once available), and the Final Approval Order (once available).

**G.  Distribution of Notice**
(Ex. 1, Settlement Agreement, § 4.1)

The Settlement Administrator will implement a robust class notice program to ensure that Class Members learn of their rights in the Settlement. The program will include a Settlement website and two methods of distribution. The Settlement Administrator will provide the Notice and Claim Forms by mail to all Class Members, to the extent mailing addresses are available. The mailing shall include a Claim Form to return with postage pre-paid. Where Notices are returned as undeliverable without a forwarding address, the Settlement Administrator shall run a database search to locate an updated address and shall mail the Notice and Claim Form to the updated address. Halfway through the Notice process, a reminder will be sent via text to those that did not yet submit a Claim Form.

**H.  Service Awards**
(Ex. 1, Settlement Agreement, § 8.2)

Under the Settlement Agreement, Class Counsel may request that the Court award the Class Representatives up to $7,500 each as a service award for their work in prosecuting this lawsuit on behalf of the Settlement Class and recovering money for the Settlement Class.

**I.  Attorney Fees and Costs**
(Ex. 1, Settlement Agreement, § 8.1)

Under the Settlement Agreement, Class Counsel may request that the Court award 35% of the Gross Fund as attorney fees plus their litigation expenses. The Notice will advise Settlement

Class Members about the attorney fee request and how to object to it.

V.  **The Court Should Grant Preliminary Approval**

   A.  **Settlement of Class Action Litigation is Favored**

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

   (1)  Preliminary approval of the proposed settlement at an informal hearing;
   (2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and
   (3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq*. With this motion, Plaintiffs request that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

The Settlement satisfies these criteria, and preliminary approval is justified. By way of comparison, settlements in other statutory privacy class actions frequently do not come near this amount, either in terms of raw numbers or percentage of available relief. *See e.g., In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11–14 (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of a federal privacy statute, where $10,000 in statutory damages were available per claim); *Marshall v. Lifetime Fitness, Inc.*, 2017 CH 14262 (Cir. Ct. Cook Cnty.) (paying a cap of $270 to individuals

8

who filed claims and reverting the remainder to defendant); *Adkins v. Facebook, Inc.,* 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs); *Carroll v. Crème de la Crème, Inc.,* 2017 CH 01624 (Cir. Ct. Cook Cnty. June 25, 2018) (BIPA settlement providing only credit monitoring).

### B. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

#### 1. The Class Representatives and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Settlement Class Counsel and the Class Representatives pursued this case vigorously on behalf of the potential class. Class Counsel briefed and defeated Defendant's motion to dismiss, engaged in written discovery, took Defendant's deposition, and obtained third-party discovery.

#### 2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of extensive arm's-length negotiation between counsel during a months-long process, with the assistance of mediator Judge Denlow.

#### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

The Class Representatives claim that they and potential Class Members are entitled to $1,000 per violation if they are able to prove Defendant's alleged violations of the BIPA were "negligent." 740 ILCS 14/20(1). The $1,500,000 Gross Fund represents a gross recovery of $125 per Settlement Class Member, but the potential to receive more depending upon the number of claims. As discussed above, the Settlement compares well to other vendor settlements and includes a non-reversionary structure. The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

##### a. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted. If the case had not settled, the case would have been highly contested with substantial third-party

9

discovery. Following that additional discovery, Plaintiffs would have filed a motion for class certification. After extensive litigation, Defendant could have obtained a victory or greatly reduced the potential class recovery based on its defenses in the lawsuit, including:

(1) Defendant's liability as a vendor of fingerscan timeclock and the sufficiency of Defendant's electronic consent or other third-party consents;
(2) that Defendant's biometric device did not collect biometric identifiers or biometric information as defined by the BIPA;
(3) that Defendant's alleged violations of the BIPA were not negligent or reckless; and
(4) that any award of liquidated damages per class member would excessive in light of the alleged absence of injury and thus the damages would violate Defendant's due process rights under the Illinois and/or United States Constitutions.

Instead of expensive, complicated, and protracted litigation, this Settlement provides significant monetary relief to Class Members now.

### b. Effectiveness of the proposed method of distributing relief to Class Members

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while also ensuring that only "legitimate claims" are paid. NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). Courts have held that requiring a claimant to fill out a short and simple claim form is an appropriate way to balance these concerns, especially in settlements with non-reversionary funds. *See In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous.").

The proposed Settlement here satisfies this factor by relying on well-established, effective methods for processing Class Members' Claim Forms and distributing the proceeds of the Settlement. The Settlement Fund will be distributed to Class Members who submit a short and

simple Approved Claim Form, by mail or electronically, to the Settlement Administrator—an independent third party with extensive experience handling the administration of settlement funds. Each person in the Settlement Class will be sent a paper Claim Form in the mail, attached to the direct notice, and will have the option to alternatively file their claim online through the Settlement Website. The Settlement Administrator will provide Class Members with resources (including a website, mailing address, a toll-free phone number, and a text reminder) to contact the Settlement Administrator or Class Counsel directly, review and process the Claim Forms, and then disperse to Class Members their pro rata share of the Settlement Fund upon approval of the Court. This distribution method is effective and supports approval.

### c. The terms of the proposed attorney fee award, including timing of payment

Class Counsel will seek an award of attorney fees of thirty-five percent of the Gross Fund plus litigation costs. (Ex. 1, § 8.1.) The Settlement provides for payment of any attorney fees awarded at the same time as payments to Class Members; there is no priority for Class Counsel. *Id.*

### d. Any Agreement required to be identified under Rule 23(e)(3)d

The Settlement Agreement is Exhibit 1 to this Motion. There are no side agreements regarding the Settlement Class or attorney fees related to this Settlement.

## 4. The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

The Settlement treats Class Members equally by distributing awards to Class Participants from the Net Fund on a *pro rata* basis. Ex. 1, § 1.27.

### C. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)

#### 1. Certification Will Be Appropriate Under Rule 23(a)

To obtain class certification, Plaintiffs must demonstrate that their claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

##### i. Numerosity

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 66,822 which satisfies numerosity.

##### ii. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court summarized the Rule 23(a)(2) requirement as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Defendant collect biometric data of Class Members without following BIPA's notice and consent requirements? Answering this common question resolves the question of liability for all Class Members. Commonality will be met here.

##### iii. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is

meant to ensure that the representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted)). The claims of the Class Representatives and Class Members arise from Defendant's use of a finger scan system for its Illinois-based companies without following the BIPA's notice and consent requirements. Typicality will be met.

### iv. Adequacy of the Class Representatives

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class representative's interest in the litigation outcome must be sufficiently strong to ensure that she is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995).

### v. The Class Representatives have an interest in the litigation and have no conflict with Class Members

The Class Representatives allege the same claims as Settlement Class Members and have no interests antagonistic to them. Thus, the Class Representatives have "a clear stake in a successful outcome – [] damages for [themselves] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017). The Settlement Class Representatives exhibited competence throughout the case, including by answering written discovery in support of the class claims in the case.

### vii. Class Counsel is experienced and qualified

A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) Class Counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). Class

13

Counsel are highly experienced class action attorneys and have been appointed class counsel in numerous other BIPA class actions. Exhibit 2, Declaration and accompanying Firm Resume.

### e. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

### f. Common questions predominate

The Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). "Thus, the Plaintiffs bear the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). The common question in this case is whether Defendant collected Class Members' biometric data without following the requirements of the BIPA.

### g. A class action is a superior mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d

948, 953 (7th Cir. 2006). Here, the alternative to class resolution is thousands of individual lawsuits for small recoveries, plus attorneys' fees and costs.

    **D.    Plaintiffs' Notice Program and Class Notice Form Merit Approval (Ex. 1, Settlement Agreement, § 4 and Ex. A & B).**

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B):

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice exceeds this standard and complies with the requirements of Rule 23(c)(2)(B).

**VI.    Conclusion**

Because the Settlement makes significant monetary relief available to Settlement Class Members who might have recovered nothing without the Settlement, the Court should grant preliminary approval. The Parties will submit a proposed Preliminary Approval Order.

Dated: September 2, 2025                       Respectfully submitted,

                                               **EDNA FRANCHINI and VALERIE SEALS**, individually and on behalf of all others similarly situated,

                                               By: /s/  David Fish
*One of Plaintiffs' attorneys*

                                               David Fish
Mara Baltabols
Workplace Law Partners, P.C.
155 N. Michigan Ave., Suite 719
Chicago, IL 60601
(312) 861-1800
dfish@fishlawfirm.com
mara@fishlawfirm.com

## CERTIFICATE OF SERVICE

      I, David Fish, an attorney, hereby certify that the foregoing was served on all counsel of record through service generated by the Court's e-filing system and via electronic mail on September 2, 2025.

                                                                    _/s/_ David Fish